ROBERT EARL LOTTIE *v.* STATE OF INDIANA.

[No. 1173S243. Filed June 10, 1974.]

*John J. Roper, Chapleau, Roper, McInerny & Farabaugh,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

PRENTICE, J.—The defendant (appellant) was convicted of armed robbery[1] in a trial to the court. He was sentenced to

---

1. 10-4709. Commission of or attempt to commit crime while armed with deadly weapon.—Any person who being over sixteen [16] years of age, commits or attempts to commit any felony while armed with any dangerous or deadly weapon, or while any other person is present and

imprisonment for a period of twenty-five years. His appeal to this Court challenges the sufficiency of the evidence and the admission of evidence of a pre-trial photographic identification. It is not necessary for us to discuss the pre-trial identification issue, as we reverse the trial court by reason of the insufficiency of the evidence.

When the sufficiency of the evidence is the issue presented upon appeal, we look only to the evidence favorable to the State and all reasonable inferences to be drawn therefrom. *Brown* v. *State* (1974), 261 Ind. 619, 308 N.E.2d 699, *Turner* v. *State* (1972), 259 Ind. 344, 287 N.E.2d 339, *Gibson* v. *State* (1971), 257 Ind. 23, 271 N.E.2d 706, *Fuller* v. *State* (1971), 256 Ind. 681, 271 N.E.2d 720. Neither do we judge the weight of the evidence nor the credibility of the witnesses. *Brown* v. *State, supra;. Turner* v. *State, supra; Gibson* v. *State, supra; Fuller* v. *State, supra.* However, every criminal conviction must be supported by evidence upon each material element of the crime charged, and that evidence must be such as will support the essential conclusions beyond a reasonable doubt. *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641, *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6, *Vuncannon* v. *State* (1970), 254 Ind. 206, 258 N.E.2d 639, *Spears* v. *State* (1970), 253 Ind. 370, 254 N.E.2d 203, *Tom* v. *State* (1973), 261 Ind. 295, 302 N.E.2d 494. We do not substitute our judgment for that of the trier of facts, if it can be said that the essential conclusions drawn were reasonable. But, if we determine that

---

aiding or assisting in committing or attempting to commit such felony is armed with any dangerous or deadly weapon, shall be guilty of a separate felony and upon conviction shall be imprisoned for [a] determinate period of not less than ten [10] years nor more than thirty [30] years. The penalty imposed by this chapter [section] is to be fixed by the court or jury trying the case, which sentence the court shall not have the power to suspend: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for any additional crimes being attempted or committed at the same time but that such term of imprisonment shall commence at the expiration of the imprisonment adjudged for any such additional crimes. (Acts 1929, ch. 55, § 1, p. 139; 1965, ch. 298, § 1, p. 819; 1969, ch. 206, § 1, p. 771; 1971, P.L. 453, § 1, p. 2092; IC 35-12-1-1).

a reasonable man could not have drawn those essential conclusions from the evidence presented, then the evidence is insufficient as a matter of law, and under such circumstances it is our duty to reverse the judgment. *Baker* v. *State, supra; Easton* v. *State, supra; Vuncannon* v. *State, supra.*

The defendant, a young black male approximately five feet eight inches tall, was seen approximately fifteen minutes before the robbery took place. He was with three black companions at a high school in South Bend situated approximately four miles from the scene of the crime. He had a toothpick in his mouth, and one of his companions was wearing a brown checked shirt.

The victims of the robbery were Mr. and Mrs. Nowak, who operated a grocery store in South Bend. The robbers were three young black men. They entered the store, and as Mrs. Nowak began to serve them, one said "Just hold it right where you are," and the one alleged to be the defendant brandished a gun. Another forced Mr. Nowak to lie on the floor, while the armed one walked around the meat counter, had Mrs. Nowak show him how the cash register operated and proceeded to empty it. One of the robbers ordered Mr. and Mrs. Nowak to the basement, but before they reached the bottom of the steps, the armed one escorted Mrs. Nowak back upstairs to open the safe. She opened it and observed him empty it.

Altogether the robbers were in the Nowak store and their attached residence for about twenty minutes. Unfortunately, only Mrs. Nowak had an opportunity to observe them. She was in their presence during a substantial portion of that time. She testified at the trial that during the robbery she concentrated upon the one robber who had the gun and upon being able to identify him, to the exclusion of the other two. Immediately following the robbery, she described him as being black, about eighteen to twenty-one years old, about her height, which was five feet five inches, or a little shorter and as having a toothpick in his mouth during the robbery.

At a photographic identification session, she selected a photograph of the defendant from among five and said that it looked like him, "except for the mouth."

Mrs. Nowak's identifying testimony at the trial was also qualified. When asked if she saw in the courtroom the individual who had displayed the gun, she responded: "Well in my opinion it is the individual sitting with Mr. Roper." (Indicating the defendant.) The defendant was then required to stand close to Mrs. Nowak, and she was then asked if she was certain that he was the man who robbed her, Her reply was: "Well the way he looks and everything he certainly does. His actions, his eyes and all, he does appear to be the same individual. However in standing up near him he looks a little taller than he did on the other side of the counter." A little later in her interrogation, she was asked "And then is it your opinion then that this defendant here appears to be the same man that robbed you on September 28, 1972?" She replied: "Well he certainly does. Like I said he had a toothpick in his mouth, whether that made a difference in his lips. In just looking at him right now the upper lip looks like it goes out a little more than it did when he was standing there with a toothpick. And when I stood up to him there he appears to be a little taller but the eyes and nose looks to me like the same individual." Mrs. Nowak then stated that she thought holding the toothpick in his mouth made his lips look a little different.

Mrs. Nowak further testified that another of the robbers was dressed in a green, brown and white plaid shirt. Conceivably, this could be a reference to the same shirt described by another witness as a brown checked shirt worn by one of the defendant's companions when seen at the school. Such a conclusion can be drawn, however, only by conjecture and speculation.

The evidence boils down to grounds for suspicion only. The defendant was seen at a time and location which would have permitted him to have traveled by automobile to the scene

of the crime at the time of its occurrence. He was a black man in the company of other young black men. The only identifying testimony was equivocal and qualified. The witness was giving her opinion and this is all any identifying witness can do. However, by her own admission, it was only the defendant's eyes and nose that resembled those of the person who robbed her. The defendant's mouth appeared different, and he was three or four inches taller than she, rather than of the same height, or a little shorter, as she had remembered the robber to be.

Coupled with other circumstantial evidence, the foregoing evidence might be very persuasive. Identifying testimony need not necessarily be unequivocal. Indeed, many convictions are predicated upon circumstantial evidence without any identifying testimony; but the totality of the evidence in all cases must be such as will permit the trier of facts, as reasonable men, to find guilt beyond a reasonable doubt. With circumstantial evidence of guilt against the defendant no greater than was presented in this case, the identifying testimony of Mrs. Nowak was crucial. If we discard the other evidence, we could not say that her identifying testimony alone would suffice. In this light, can we say that the evidence that the defendant had a toothpick in his mouth twenty minutes earlier and could have traversed the distance from the school to the scene of the crime in the elapsed time, supplies the weight necessary to move the balance from the point of mere suspicion to the point of belief beyond a reasonable doubt?

The evidence in this case tends to support a conclusion of guilt, but it does not rise to the minimum standards set forth in *Baker* v. *State, supra; Easton* v. *State, supra; Vuncannon* v. *State, supra; Spears* v. *State, supra; Tom* v. *State, supra.*

The judgment of the trial court is reversed; and there being nothing in the record to indicate that the evidential

deficiency might be supplied upon a retrial, we direct that the defendant be discharged.

DeBruler and Hunter, JJ., concur; Arterburn, C.J., dissents with opinion in which Givan, J., concurs.

### DISSENTING OPINION

ARTERBURN, C.J.—I dissent from the majority opinion because I feel it in effect usurps the fact-finding prerogatives of the jury or the trial court. The Constitution gives the fact-finding duties to them and the trial court, not to us as a court of appeals. Whether or not the evidence is believable or is circumstantial which we would not believe is not for us to determine, but rather for those who saw the witnesses, their demeanor on the witness stand and heard the tone of voice in which they made their answers. Identity is a question of fact. We, on appeal, have no right to substitute our opinion as to a fact for that of the jury or the trial court.

Givan, J., concurs.

NOTE.—Reported at 311 N.E.2d 800.