Arthur A. **RICHARDSON**, Appellant
(Defendant below),

v.

**STATE of Indiana**, Appellee
(Plaintiff below).

No. 278S34.

Supreme Court of Indiana.

April 17, 1979.

Rehearing Denied June 20, 1979.

James J. Nagy, Eichhorn, Morrow & Eichhorn, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with the Commission of a Felony (Robbery) While Armed in violation of Ind.Code § 35–12–1–1 (Burns 1975). Following a trial by jury he was convicted and sentenced to imprisonment for thirty years. On appeal he presents the following issues:

(1) Whether the trial court erred in permitting a witness who had failed to appear for a scheduled deposition to testify and in permitting two witnesses to testify, although they had not been included upon the State's witness list.

(2) Whether the trial court erred in admitting into evidence Exhibit 1, a photograph which had been used as part of a photographic display, and Exhibit 3, a "mug-shot" which had been made of Defendant at the time of his arrest.

(3) Whether the evidence was sufficient to sustain the verdict.

(4) Whether the trial court erred in refusing to instruct the jury on various lesser-included offenses.

(5) Whether the trial court erred in imposing a thirty year sentence.

\*     \*     \*     \*     \*     \*

## ISSUE I

On the morning of the first day of trial, Defendant filed a Motion for a Protective

Order requesting that the testimony of the prosecuting witness be excluded because he had twice failed to appear for a scheduled deposition. Instead, the trial judge ordered a one day continuance to give Defendant an opportunity to depose the witness. On appeal, Defendant contends that exclusion of his testimony would have been the proper remedy.

The sanctions for failure to comply with a discovery request are discretionary, not mandatory. *Lund v. State* (1976), 264 Ind. 428, 432, 345 N.E.2d 826, 829; Indiana Rules of Trial Procedure, Rule 37. The usual, but not sole, remedy for failure to comply with a discovery request is an order compelling compliance. *Chustak v. Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 396, 288 N.E.2d 149, 154.

In the instant case, Defendant did not seek the trial court's aid until the first morning of trial, and under these circumstances, the trial judge acted within his discretion in ordering a one day continuance.

Following the grant of the continuance, there was no showing, or even a claim, that such remedial action had not sufficed. We also observe that there was neither a showing or claim that counsel had been diligent in his investigation and preparation for trial and that the deposition of the witness reasonably appeared to be necessary or prudent.

The Defendant also complains that the court allowed two witnesses to testify, notwithstanding that their names had not been included upon the State's witness list. However, the court, upon being notified of the irregularity excused the jury, determined the nature of the testimony the State proposed to elicit from such witnesses and then permitted the defendant to examine each at length. It was only after the defendant and his counsel were thusly fully apprised of the testimony to be elicited from the witnesses that they were permitted to testify. Defendant made no objection to this procedure and requested no additional relief. In this regard, we see neither error nor a claim of error subject to review.

## ISSUE II

Defendant contends that the State failed to lay a proper foundation for the introduction into evidence of State's Exhibits 1 and 3, that these exhibits were not authenticated, and that a pre-trial photographic display for identification purposes had been unnecessarily suggestive.

Mr. Iott, the sole eye-witness to the crime, testified that Officer Watson of the Lake County Police Department, less than one month after the occurrence of the crime displayed to him a group of eight photographs. He further stated that all of the men who were portrayed generally resembled the robber and that he had at that time, selected the photograph marked as Exhibit 1 as positively portraying the man who had robbed him. Officer Watson identified Exhibit 1 as being a photograph of the Defendant, and the officer affirmed that Mr. Iott had so selected Exhibit 1 as portraying the robber. Thus, Exhibit 1 was properly authenticated and the photographic display was conducted in a constitutionally permissible manner.

Exhibit 3, an arrest photograph of Defendant, was introduced into evidence to show the subsequent changes in the defendant's physical appearance, to-wit: he had shaved his mustache, cut his hair in the Afro style, started wearing glasses, and achieved a more muscular build. Testimony regarding this change had been necessitated by the inability of the sole eye-witness to make a definite in-court identification. Officer Peter Mokal testified that Exhibit 3 was the arrest photograph of the defendant and that it was a true and accurate representation of how Defendant had appeared on that day. Thus, Exhibit 3 was properly authenticated.

When Exhibit 3 was admitted into evidence, it bore the title "Lake County Police," an identification number, and a date. Defendant contends that he was prejudiced by the trial court's failure to remove this

information from the photograph, citing *Saffold v. State* (1974), 162 Ind.App. 6, 317 N.E.2d 814, and *Shindler v. State* (1975), Ind.App., 335 N.E.2d 638. While these cases do state the general rule that mug-shots are not admissible if they tend to prove or imply that a defendant has a criminal record, both cases were decided on the basis of an exception which is likewise present in the case at bar, namely: photographs taken incidentally to the arrest for the crime charged in the current case. Such photographs do not imply a prior arrest or conviction and, therefore, are admissible if they have independent probative value. In the case at bar, the testimony prior to the introduction of the photograph and the photograph itself were devoid of any implication of a prior unrelated arrest or conviction.

## ISSUE III

As we stated earlier, Mr. Iott was the only witness to the crime. The State presented no other direct or circumstantial evidence connecting the defendant with the crime. The State's entire case was dependent upon the credibility of Mr. Iott's identification of the defendant. Under such circumstances, that testimony must be unequivocal. *Lottie v. State* (1974), 262 Ind. 124, 129, 311 N.E.2d 800, 803; *Gaddis v. State* (1969), 253 Ind. 73, 80, 251 N.E.2d 658, 661–62. "This court must be particularly vigilant where a conviction is supported by the testimony of one eye witness. Testimonial errors resulting from imperfect recollection, defective perception or suggestion have been shown to occur and we would be careful not to implement a miscarriage of justice in such a situation where that testimony is the *only* testimony of appellant's guilt." *Gaddis v. State, supra* at 80, 251 N.E.2d at 662. Defendant contends that Mr. Iott's testimony was equivocal and, therefore was insufficient to sustain a conviction as a matter of law. We find it necessary to review the crucial parts of Mr. Iott's testimony, ever mindful of the standard of appellate review set forth in *Lottie v. State, supra,* at 262 Ind. 126–27, 311 N.E.2d at 801:

"When the sufficiency of the evidence is the issue presented upon appeal, we look only to the evidence favorable to the State and all reasonable inferences to be drawn therefrom. Neither do we judge the weight of the evidence nor the credibility of the witnesses. However, every criminal conviction must be supported by evidence upon each material element of the crime charged, and that evidence must be such as will support the essential conclusions beyond a reasonable doubt. We do not substitute our judgment for that of the trier of facts, if it can be said that the essential conclusions drawn were reasonable. But, if we determine that a reasonable man could not have drawn those essential conclusions from the evidence presented, then the evidence is insufficient as a matter of law, and under such circumstances it is our duty to reverse the judgment." (Citations omitted).

In describing the events of the night in question, Mr. Iott testified on direct examination as follows:

"A. It was about 10:00 o'clock, and the car pulled up. The car pulled up and in the far island, I went, I looked at it and make sure it was going to stop, and if he wanted service. He did stop, and a man got out and he opened his hood. I walked out there, he said he was having motor problem, and so I started to lean over the car to see if I could see anything wrong with the motor. Right as I started to bend over he pulled a gun out of his pocket.

     \*     \*     \*     \*     \*     \*

"Q. And now far away was he from you?

"A. About two or three feet.

"Q. Was there any lighting available?

"A. Yes, there was two lights behind him and two lights behind me.

     \*     \*     \*     \*     \*     \*

"Q. Could you see the man's face clearly?

"A. Yes, I could at that time, but I didn't really—

"A. Fine."

And in regards to the photographic display

. . .

"Q. Mr. Iott, how do you recognize [this photograph, Exhibit 1]?

"A. It looks like the guy that held me up that night.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. You saw that picture in December of 1976, what if anything, did you say about it?

"A. What I remember saying is, "Yes, that is the man there, that is him.

"Q. That is who?

"A. That is the man that held us up that night.

"Q. Mr. Iott, is that in fact the man who did hold you up that evening?

OBJECTIONS OMITTED

"A. Yes, sir, I say it was the man that robbed me."

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. Mr. Iott, you positive the individual you identified in the picture is the individual that robbed you that evening?

"A. Yes, sir."

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. Mr. Iott, again looking at Exhibit 1, is that the man who robbed you December 2nd, in 77?

"A. Yes, it looks like the man that robbed me that night."

When Mr. Iott was asked whether the defendant was the man who had robbed him he responded, "I think so, but I can't be positive right now." and "I am not certain, no."

Standing alone, Mr. Iott's in-court identification would not have sufficed. However, his indirect identification from viewing the photograph of the defendant had not been equivocal and was minimally sufficient against a sufficiency challenge. It was buttressed by the equivocal in-court identification, and the two together cannot be said to be insufficient as a matter of law.

Additionally, Defendant contends that the State failed to prove a necessary element of the charge, to-wit: that something of value was taken. However, Mr. Iott testified that the robber had taken the station's wallet, after ripping it from the chain which had attached it to Mr. Iott's belt. This was sufficient evidence for the jury to have concluded that an "article of value" was taken during the robbery. *Cf., Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193, *cert. denied,* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100 (a jacket and two slacks); *Bayer v. State* (1973), 158 Ind.App. 531, 303 N.E.2d 678 (blank checks).

## ISSUE IV

Defendant next contends that the trial court erred in refusing to instruct the jury on various lesser-included offenses.

The propriety of instructing the jury upon lesser-included offenses is determined by an examination of the statute, the indictment or information and the evidence introduced at trial. *Hester v. State* (1974), 262 Ind. 284, 288, 315 N.E.2d 351, 354. In the case at bar, all the evidence showed that an armed robbery had been committed. The only substantial point of contention at trial was the identity of the robber. Under such circumstances, it was not error to refuse to issue the requested instructions. *Minton v. State* (1978), Ind., 378 N.E.2d 639, 642. *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783; *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770.

## ISSUE V

Defendant's final contention is that the imposition of the thirty year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I, Section 18, of the Indiana Constitution.

This Court will not impose a sentence different from that authorized by the jury unless it is grossly disproportionate to the nature of the offense or unquestionably excessive. *Hall v. State* (1978), 371

N.E.2d 700, 701. In the instant case, there was evidence that the defendant aimed a handgun at a service station attendant, and ripped the station's wallet from a chain attached to his person. Under those facts, imposition of the jury's verdict of thirty years does not constitute cruel and unusual punishment.

" * * * Generally, the constitutional prohibitions against cruel and unusual punishment are proscriptions of atrocious or obsolete punishments and are aimed at the kind and form rather than the duration. *Hollars v. State* (1972), 259 Ind. 229, 286 N.E.2d 166 and cases there cited.

" 'These are primarily legislative considerations, and we are not at liberty to set aside a conviction and sentence because, on the record, they seem severe. *Blue v. State* (1946), 224 Ind. 394, 67 N.E.2d 377; *Mellot v. State* (1942), 219 Ind. 646, 40 N.E.2d 655.

" 'It is only when a criminal penalty is not graduated and proportioned to the nature of the offense, or where it is grossly and unquestionably excessive that this provision of the Constitution is intended to apply. *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. Such is not the case here.' 286 N.E.2d at 170." *Beard v. State,* (1975), 262 Ind. 643, 648–49, 323 N.E.2d 216, 219.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.