Gordon E. BROCK, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 181S14.

Supreme Court of Indiana.

July 23, 1981.

Charles A. Beck, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Raymond M. Kirtley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Gordon E. Brock was convicted by a jury of robbery, a class B felony. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Corrections for a period of twenty years. In his direct appeal, he raises the following issues for our review:

1. Whether the evidence was sufficient to support the conclusion that he was the person who committed the robbery; and

2. Whether alleged prosecutorial misconduct constituted reversible error.

The record reveals that on February 20, 1979, the "Liquor Locker" located at 1540 Kentucky Avenue in Indianapolis was robbed by a Caucasian male approximately fifty years of age. A photographic identification of defendant as the man who robbed the liquor store was made by employee Delores Brown and prompted defendant's arrest for the conviction at issue here.

## I.

Defendant maintains that the evidence was insufficient as a matter of law to support the conclusion that he was the person who committed the robbery of the Liquor Locker. His contention is premised on instances of equivocation in Delores Brown's in-court identification of him as the robber. Specifically, defendant relies on the following testimony from Brown's direct examination:

Q. "Now, looking around this Courtroom, do you see anyone whom you recognize as being the individual who robbed you on February 20th, 1979?"

A. "It looks a lot like the guy right there."

He also points to the following testimony from the cross-examination of Brown:

Q. "And, you then said he does have some of the features of the robber. My final question, Mrs. Brown, the man I'm now touching, you are telling this jury, under oath, that he was the man, no question about it, is that right, ma'am?"

A. "I don't like to tell anything on anybody that I'm not pretty sure of."

Q. "You what?"

A. "That I'm not pretty sure of."

Q. "The question was, are you telling the jury under oath, that the man I now touch was the man who robbed you?"

A. "He looks to me like the very man that stood and held the gun in my face."

Q. "He looks like the guy who held the gun on you?"

A. "Yes, he does."

Defendant asserts that this equivocal testimony fails to establish beyond a reasonable doubt his identity as the perpetrator and that, inasmuch as Brown was the only eyewitness to the robbery, his conviction must be reversed.

It is well settled that when the sufficiency of the evidence is raised as an issue on appeal, this Court will not weigh the evidence nor judge the credibility of witnesses. *Moon v. State,* (1981) Ind., 419 N.E.2d 740; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776. Only when this Court has confronted "inherently improbable" testimony, *Penn v. State,* (1957) 237 Ind. 374, 146 N.E.2d 240, or coerced and wholly uncorroborated testimony of "incredible dubiosity," *Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658, has this Court disturbed the prerogative of the jury to judge the credibility of a witness.

Here, the evidence reveals eyewitness Brown was in the presence of the perpetrator for a period of two to three minutes. She stated the man was approximately three feet away from her for the duration of the robbery, that the store was "pretty well lit," and that she was able to see his face "pretty well." That same day, she described the perpetrator to Indianapolis police officers as a white male, approximately fifty years old, who wore blue work clothing, had receding brown hair, and weighed approximately 160 pounds. The following day at police headquarters, she identified a photograph of defendant as the man who had committed the robbery. On four separate occasions at trial, Brown identified defendant as the perpetrator.

In his brief, defendant concedes that Brown's testimony during these various in-court identifications was sometimes "more deliberate" than those portions quoted to support his argument. At various junctures, the record does reveal certitude on the part of Brown regarding her identification:

Q. "Do you recognize what's marked as State's Exhibit Number 1?"

A. "I'm sure that's the guy I picked out."

Q. "Is that an accurate representation of the photo you recall selecting that day?"

A. "I'm sure it is."

Q. "Is that the same individual that robbed you?"

A. "Yes, I'm sure it is." [Direct examination.]

\* \* \* \* \* \*

Q. "Wholly convinced, Mrs. Brown?"

A. "Yes, I am." [Re-cross examination.]

\* \* \* \* \* \*

Q. "Now you are telling us that it definitely is him, is that what you are now telling us."

A. "That is the man that robbed me." [Re-cross examination.]

Defendant maintains "such comments are clearly the result of the witness trying to avoid the embarrassment of monumental error."

▮▮▮ That assertion strikes directly at the credibility of the witness. We are not at liberty in these circumstances to assess her credibility or to say that her unequivocal testimony was not credulous in light of her somewhat tentative statements. "Identifying testimony need not necessarily be unequivocal." *Lottie v. State,* (1974) 262 Ind. 124, 311 N.E.2d 800; *Wilson v. State,* (1977) 172 Ind.App. 476, 360 N.E.2d 1010. The jury had the opportunity to view Brown's demeanor; she was examined extensively by both the state and defense concerning the verity of her photographic and in-court identifications. We cannot disturb the jury's conclusion that the defendant, whose physical characteristics were substantially in accord with those attributed to the perpetrator, was the person who committed the robbery. *Lottie v. State, supra; Wilson v. State, supra.* The evidence was sufficient to support defendant's conviction.

**II.**

Defendant contends that alleged prosecutorial misconduct placed him in "grave peril of conviction" and constitutes reversible error. His argument is predicated on the following comment[1] by Deputy Prosecutor Whitney, which he uttered during his cross-examination of defendant's wife:

Q. "You don't want anything to happen to him, do you?"

A. "Well, certainly not, not when he is an innocent man."

Q. "You don't know whether he is innocent or not, do you?"

A. "Yes, I do, he took a lie detector test—"

MR. WHITNEY: "Your Honor, that is —"

A. "—and passed it."

MR. WHITNEY: —"clearly prejudicial, he clearly set this program up. He is pulling the most low life tricks in this case,—"

MR. FOX: "Your Honor,—"

THE COURT: "Sit down. Ladies and gentlemen of the jury, I ask you to go out for a moment for purposes of allowing the Court to listen to an argument and ask that you not speculate as to what is going on in the Courtroom."

With the jury absent from the courtroom, the court established that defense counsel had not induced or encouraged the witness to mention the results of the polygraph examination. The Deputy Prosecutor's remarks toward defense counsel were characterized by the trial court as "unprofessional" but made in "the heat of battle." Defense counsel indicated he felt the remarks were intended to malign him, but stated he "would not belabor the personal matter because it was rather insignificant . . . ." Both parties then joined in a motion to admonish the jury to disregard the reference to the polygraph examination, which

---

1. In his motion to correct errors, defendant also based his claim of prosecutorial misconduct on statements allegedly made by the Deputy Prosecutor during closing arguments. That basis has not been argued on appeal, nor has that portion of the trial record been tendered to this Court. That aspect of defendant's claim is therefore waived.

the trial court granted. No similar motion was tendered to the court concerning Deputy Prosecutor Whitney's remarks, nor was a motion for mistrial presented to the court. The jury then returned to the courtroom, was admonished to disregard the reference to the polygraph examination, and the trial proceeded.

In support of his contention that the Deputy Prosecutor's remarks constitute reversible error, defendant relies on *Flynn v. State*, (1978) Ind.App., 379 N.E.2d 548, and the Code of Professional Responsibility, D.R. 7–106(C)(6) (Burns 1980 Repl.). *Flynn v. State, supra,* is inapposite to the circumstances present here. There, the Court of Appeals reversed the conviction of defendant Flynn, whom the prosecutor described as a "drug dealer" in closing arguments. The evidence regarding whether Flynn was in fact a drug dealer had been vigorously disputed at trial. Consequently, the prosecutor's remarks were held sufficient to have placed the defendant in grave peril of conviction for unlawful possession of drugs, and a new trial was granted.

 Without question, the Deputy Prosecutor's remarks in the instant case, although inspired by the "heat of battle," were improper and unprofessional. Prosecuting attorneys are entitled to present their case with earnestness and vigor, but, as representatives of the state and officers of the court, they are not entitled to indulge in personal insinuations of the sort present here. *Berger v. United States,* (1935) 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. The remarks of Deputy Prosecutor Whitney, even though spontaneously uttered, have no place in our tribunals. Code of Professional Responsibility, D.R. 7–106(C)(6), *supra.*

Nonetheless, we conclude that the prosecutorial misconduct did not place defendant in grave peril of conviction so as to warrant a new trial. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. The isolated instance of misconduct was directed not at defendant but at defense counsel, who conceded it was a "rather insignificant" personal matter. In light of these facts, we are not persuaded that the incident so colored the jury's attitude toward the defendant and the evidence, which was extensive, that the jury's ultimate decision was thereby persuaded. *Maldonado v. State, supra; Marsh v. State,* (1979) Ind., 396 N.E.2d 883; *Williams v. State,* (1980) Ind.App., 408 N.E.2d 123. Therefore, the misconduct does not warrant reversal of defendant's conviction.

For all the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.