Joseph W. HURLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1081S303.

Supreme Court of Indiana.

April 13, 1983.

Stuart W. Hyvonen, Rensselaer, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

**1328**

PIVARNIK, Justice.

Defendant-Appellant, Joseph W. Hurley, was convicted of Possession of Marijuana, Ind.Code § 35–48–4–11 (Burns Supp.1982), and Maintaining a Common Nuisance, Ind. Code § 35–48–4–13 (Burns Repl.1979), at the conclusion of a jury trial in Jasper Circuit Court on March 5, 1981. The trial court subsequently sentenced him to two (2) years on the charge of maintaining a common nuisance and two (2) years on possession of marijuana, both terms to be served concurrently. For the finding of habitual offender, Hurley was sentenced to an additional thirty (30) years.

Defendant raises seven errors for our consideration, concerning: 1) whether the trial court erred in refusing the defendant a psychiatric evaluation; 2) whether the trial court erred in joining the offenses at trial; 3) whether certain of the State's exhibits were improperly admitted; 4) whether the trial court erred in denying the defendant's motion for continuance; 5) whether the transfer of the defendant to the Lake County Jail denied him effective assistance of counsel; 6) whether the trial court erred in overruling the defendant's Motion to Quash Search Warrant and Suppress Evidence; and, 7) whether the trial court erred in permitting the State to cross-examine the defendant's wife regarding her prior conviction.

On December 31, 1979, Todd Bilek, a fourteen-year-old, lived with his father, step-mother, grandmother and grandfather, in Remington, Indiana. The evidence showed that Todd had known the defendant for about a month and had previously purchased marijuana from him. On December 31, Todd's grandfather found some marijuana which Todd had unintentionally dropped in the bathroom. The Jasper County Police were called and after discussing the situation with Todd's father, Officer Schieler of the Jasper County Police asked Todd whether he would be willing to buy more marijuana from the defendant and turn it in to the police. Todd agreed to do so. At 7:30 that evening Todd went to the defendant's home and purchased slightly less than

half an ounce of marijuana. Todd and his father delivered the marijuana to Officer Schieler. On January 2, 1980, a probable cause affidavit was executed in which Todd attested to the above facts. A search warrant for the defendant's home was issued and carried out and the defendant and his wife, Brenda Hurley, were arrested. Defendant was originally charged with dealing in marijuana but the jury found him not guilty on that charge. Paraphernalia and marijuana seeds were found in the house at the time of the search. Defendant's wife pleaded guilty to a charge, stemming from the incident, of visiting a common nuisance.

**I**

Defendant argues that the trial court erred in denying him a psychiatric evaluation to determine his competency to stand trial when his attorney suggested on the morning of trial that such a motion had been filed by a previous attorney. Defendant changed attorneys during the pleading stages of the trial and apparently some continuity was lost in so doing. The record contains a minute sheet which seems to indicate Defendant's first appointed counsel, Stuart Hyvonen, filed a request for psychiatric examination on January 8, 1980. Although this appeared in the minute sheet no one seemed to be aware of the situation and it is questionable that the judge ever signed the entry although the entry does purport to have been signed by Judge Philip McGraw, judge *pro tempore*. The only allegation in the entry is an assertion by Defendant's counsel that he suggested to the court that reasonable grounds existed for his belief that the defendant "lacks the ability to understand the proceedings and to assist in the preparation of his defense." This was not pursued any further by the defendant or his attorney. The defendant failed to appear at his June trial date and Hyvonen withdrew his appearance.

On November 10, 1980, Defendant was again placed in custody and Pat Riley was appointed as his counsel. Riley was unaware of the request for psychiatric evaluation. On December 8, 1980, Riley filed De-

fendant's Motion for an Early Trial, a hearing was had on the Motion and the cause was set for trial on March 5 and 6, 1981. On the morning of March 5, prior to trial, the trial court heard motions of counsel outside the jury's presence. At this time, defense counsel informed the court that the defendant's previous attorney had filed a Motion for Psychiatric Examination but no ruling had been made. Defense counsel admitted that the motion did not appear in the trial court's file. The trial judge indicated he had never seen the motion and upon questioning defense counsel the trial court discovered that although Riley had represented the defendant for at least four months, had pressed for an early trial, and had interviewed the defendant a week before trial, she had not suggested to the court that the defendant was unable to assist in the preparation of his defense nor had the question ever arisen. Riley conceded that she had discovered the motion only the day before trial. Finally, the trial judge asked counsel: "As this young man's attorney, and as an officer of this Court, do you think that he's unable to assist in his defense?" Attorney Riley did not express an opinion that she herself thought there was a question about Defendant's ability to assist in the preparation of his defense. Instead, she replied: "Your Honor, I can only act on what he's told me, and he feels that a psychiatric examination would be in his best interest. That he feels that because he's been placed in solitary so often that he has been—this is lingered so long that he does have serious mental problems."

■ The State's position is that Ind. Code § 35–5–3.1–1 (Burns Repl.1979) (now repealed) provides that an evaluation should be undertaken when the court has reasonable grounds to question a defendant's competency but that the accused has the burden of establishing that reasonable grounds exist. *Green v. State,* (1981) Ind., 421 N.E.2d 635. We agree. The trial court has discretion to determine whether there are reasonable grounds to believe that the accused is incompetent to stand trial and that decision will be reviewed only for an abuse of that discretion. *Dragon v. State,* (1979) Ind., 383

N.E.2d 1046, 1047, *cert. denied,* (1979) 442 U.S. 912, 99 S.Ct. 2829, 61 L.Ed.2d 279; *Harris v. State,* (1974) 262 Ind. 208, 212, 314 N.E.2d 45, 48.

In *Ray v. State,* (1979) Ind., 396 N.E.2d 373, this Court held that competency requires a factual determination and our review encompasses the facts presented to the trial court and reasonable inferences to be drawn therefrom. There were no facts presented to the trial court here and trial counsel was not able to say that in her opinion there was a question concerning Defendant's competency. A prior attorney a year earlier had filed merely a bald assertion that there were reasonable grounds to suspect the competency of Defendant but did not follow up on the claim. In fact, there is a serious question whether the motion was properly filed with the trial court as it does not appear that either the trial court or the State was furnished a copy of the motion or a notice of its filing. The subject came up on the morning of trial only on discovery by attorney Riley that a suggestion of incompetency had been filed in January, 1980. Riley's activities with Defendant and his participation in the case indicated that there was no question regarding his cooperation and his competency to stand trial as many motions were pursued and a speedy trial motion was filed which resulted in a trial date of March 5. Thus, because no reasonable grounds were presented to indicate incompetency, the trial court was not required to grant the evaluation and there has been no abuse of discretion.

## II

■ On the morning of trial the State moved to join the count of maintaining a common nuisance and possession of marijuana with the count of dealing in marijuana. Apparently these counts were filed under separate cause numbers. Defendant objected to such joinder. Defendant's counsel argued that she was prepared to try any of the charges separately but she was not prepared to try them together. Although it

is not made clear by any of the briefs, apparently all of these charges were considered together during the pleading stages and were prepared for trial and set for trial on that date. We can only surmise it was an oversight in the record that they were not formally joined for trial prior to the morning of trial. This is evidenced by the fact that the parties were ready to try all of the charges and defense counsel herself stated she was able and prepared to try any of the charges. The issue arose when the court was hearing motions for both parties prior to commencing the trials. In view of these circumstances we find no error in the court's action. Ind.Code § 35–3.1–1–10(b) (Burns Repl.1979) (now repealed) provides that joinder is permissible if the court finds that the offenses are part of a series of acts connected together or which constitute a single scheme or plan as contemplated by Ind.Code § 35–3.1–1–9(a)(2) (Burns Repl. 1979) (now repealed). We agree with the State that the charges of maintaining a common nuisance, possession of marijuana and dealing in marijuana were based on a connected series of acts in this case and could properly be joined before the trial commenced.

### III

Defendant contends the trial court erred by admitting into evidence State's Exhibits 23, 24, and 25, which were certified records of his prior felony convictions. The State introduced these to establish that the defendant should be sentenced as a habitual offender. Defendant's objections are directed toward references in the documents to his plea bargaining in those causes. He claims those references were surplusage which would prejudice the jury against him. The prior conviction records also show plea bargain arrangements were made between the defendant and the State in which he entered guilty pleas and the State dismissed other charges. He claims the jury would be prejudiced by finding that he had committed other more serious crimes than those for which he was convicted. The State argues that Defendant has cited no authority in support of this objection and has therefore waived its consideration on appeal pursuant to Ind.R.App.P. 8.3(A)(7) and *Chandler v. State,* (1981) Ind., 419 N.E.2d 142. We agree with the State's position on this issue; however, we also find that the issue has no merit. The only facts the jury needed to find were that the defendant was convicted of the crimes represented by State's Exhibits 23, 24, and 25. As we stated in *Wise v. State,* (1980) Ind., 400 N.E.2d 114, the enhanced sentencing is based upon the fact of the prior convictions. These records clearly demonstrated that the defendant had at least twice been convicted of other felonies. There is no showing that the defendant was in any way prejudiced by the other matters which he finds objectionable in the record.

### IV

Defendant's counsel moved for a continuance on the morning of trial to give her an opportunity to examine evidence to be offered by the State. Counsel claimed that the State had failed to provide her with certain items, such as a witness list and a statement taken from Todd Bilek. The trial court denied the motion.

Sanctions for a failure to comply with a discovery order are discretionary, not mandatory. *Osborne v. State,* (1981) Ind., 426 N.E.2d 20, 25; *Richardson v. State,* (1979) 270 Ind. 566, 567, 388 N.E.2d 488, 490. Generally, an order compelling disclosure and a continuance are the appropriate remedies in such a situation. *Osborne, supra; Richardson, supra.* Where the violation is grossly misleading or demonstrates bad faith, exclusion of the evidence may be required. *O'Conner v. State,* (1980) Ind., 399 N.E.2d 364, 366.

We note that this problem again seems to be caused by the changing of counsel during the pleading stages. The record shows that former counsel Stuart Hyvonen had filed a motion for discovery on January 8, 1980. The record further shows that the trial court set a hearing on this motion for January 21, 1980. There does not appear to be any transcript of the hearing in the record or any order or entry made by the

trial court in response to this motion for discovery. The prosecutor indicated to the trial court, however, that he had given Hyvonen everything in his files and his files had been open for inspection by the defendant's counsel at all times. Defense counsel admitted that the trial court had advised her to contact Hyvonen and obtain his files but stated that she had failed to do so until the day before the trial. She also stated that she sent a letter to the prosecutor on December 12, indicating that she wanted the missing discovery items. The letter did not spell out what items were missing but instead recited that certain items were desired pursuant to an earlier motion. The prosecutor said he had always made everything available to both attorneys.

We agree with the trial court that the motion for discovery was not timely made. This situation is analogous to the situation found in *Cameron v. State*, (1980) Ind., 412 N.E.2d 1194. In *Cameron,* the defendant asked for a mistrial because the prosecutor allegedly failed to provide him with a statement given by the victim. We said that if the allegation was true, the defendant should have discovered the omission and raised the matter at an earlier time, not during cross-examination. In this instance, defense counsel raised the issue on the morning of the trial when everything was ready to proceed. The trial court informed defendant's counsel that she had had several months during the trial preparation to notify the trial court or the prosecutor that she needed items of discovery. She failed to contact the former attorney until the day before trial which would not give her much time to recover any missing items. There is no error on this issue.

We might further add that Defendant does not allege or claim that he was in any way prejudiced or surprised by any of the State's evidence. There is no showing that surprise evidence was presented or that there was an inability to cross-examine a witness because of a lack of any of the State's exhibits. In the absence of prejudice or surprise to the defendant, he is not entitled to relief on his claim of reversible error. *Miller v. State,* (1980) Ind., 405 N.E.2d 909, 912.

## V

Defendant claims he was denied effective assistance of counsel when he was transferred to the Lake County Jail and that the trial court erred in denying his petition to transfer him back to Jasper County. He claims he was denied his right to consult with counsel at every stage of the proceeding, citing *United States v. Wade,* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Powell v. Alabama,* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; *Cade v. State,* (1976) 264 Ind. 569, 348 N.E.2d 394, and *Lloyd v. State,* (1960) 241 Ind. 192, 170 N.E.2d 904. The trial court conducted a hearing on Defendant's petition to be transferred back to Jasper County Jail and found: "... that the Defendant on several occasions created disturbances in the Jasper County Jail, and that because of the size of the Jail and the accoustical (sic) problems, that his conduct while incarcerated in the Jasper County Jail was disruptive, and that for the orderly and effective operation of the Jail that it was necessary to transfer the Defendant to the custody of the Lake County Sheriff to be incarcerated in the Lake County Jail...."

The transfer was effected to maintain order at the Jasper County Jail and came as a result of Defendant's own actions. There was no purpose in the transfer to deny Defendant access to his attorney nor is there any showing that that was the result. It takes less than an hour to travel from Jasper County to Lake County and defense counsel did admit that she visited with Defendant in Lake County and conferred with him. There is no showing that Defendant was prejudiced in any particular manner by this transfer. Defendant makes only a general claim that there was a denial of the right to confer. In view of the circumstances of the transfer caused by the defendant's own behavior, we find no error in the trial court's ruling.

## VI

Defendant claims the trial court erred when it overruled his motion to quash the search warrant of his home and suppress the evidence seized. He claims the search warrant was invalid because it was based on the affidavits of Todd Bilek and the police officer. Defendant feels that Todd Bilek's affidavit is invalid because Bilek is a juvenile and had admitted using marijuana. Defendant claims the police officer's affidavit is invalid because it was based on the officer's interview of the juvenile. He argues that Officer Harker's affidavit of probable cause is insufficient because it refers to information supplied by Bilek and does not aver facts which establish that Bilek is a reliable informant. His argument is based on Ind.Code § 35–1–6–2(a) (Burns Repl.1979) (now repealed) which provides that an affidavit based on hearsay must set forth such facts. Here, however, the informant that Officer Harker relied on also filed an affidavit in which direct facts were set out regarding a purchase of marijuana from the defendant. Defendant gives us no reason or authority for assuming that Bilek's affidavit is invalid or unreliable simply because the witness was a fourteen (14) year-old juvenile. A party challenging a witness on the basis of incapacity to understand the nature of an oath bears the burden of establishing such grounds. *Springer v. State,* (1982) Ind., 437 N.E.2d 998, 1000. Defendant has not proved that Todd did not understand the affidavit. Furthermore, since Defendant fails to support his argument with any authority he waives his right to have it considered in this appeal. Ind.R.App.P. 8.3(A)(7) and *Chandler, supra.* We accordingly find the trial judge did not err in overruling Defendant's motion to quash the search warrant and suppress the seized evidence.

## VII

Defendant called to the stand his wife, Brenda Hurley, who testified that there was no marijuana in the house at the time of the search and arrest. On cross-examination, and over objection, the State was allowed to question the witness regarding the fact that she had pleaded guilty to a charge of visiting a common nuisance stemming from the same incident. The witness admitted that she had entered that plea and that paraphernalia and marijuana seeds were found in the house at the time of the search.

Defendant bases his objection on the holding in *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210. *Ashton* held that a witness may not be impeached on the basis of prior convictions which do not reflect on the witness' inclination to tell the truth. *Id.* at 62, 279 N.E.2d at 217. *Ashton* does not apply to the situation at hand. The questions asked of Brenda Hurley went directly to impeach her statement that there was no marijuana on the premises. This is more analogous to *Williams v. State,* (1978) 269 Ind. 193, 379 N.E.2d 449 and *Rogers v. State,* (1978) 268 Ind. 370, 375 N.E.2d 1089. In those cases, one witness entered a guilty plea to charges stemming from the same incident that involved the defendants. The witness also gave a statement to the police but on the witness stand changed his mind and said he knew nothing of the incident. We held that in those instances where the story is changed at trial, it was proper to allow the prior statement to come in. Here, Brenda admitted entering the plea and making the prior statement. The trial court properly permitted the cross-examination of the defendant's wife.

The judgment of the trial court is affirmed.

All Justices concur.