Richard STATON, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S434.

Supreme Court of Indiana.

Dec. 4, 1981.

Edward New, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

The appellant, Richard Staton, was charged with two counts of child molesting, Ind. Code § 35–42–4–3, and convicted on both counts after a trial by jury. He was sentenced to imprisonment for ten years plus ten years for aggravating circumstances on each count, the sentences to be served consecutively. His motion to correct error was denied and this appeal follows:

I.

The first issue concerns three questions regarding the nine-year-old victim: whether the trial court should have granted the defendant's petition seeking a mental examination of the victim; whether the trial court abused its discretion in determining that she was competent to testify; and whether the trial court erred in refusing to hear testimony that the victim suffered from brain damage and was "a born liar".

A.

■ Staton petitioned for and was granted a pre-trial hearing on his petition for a mental examination of J.H., the alleged victim of the sexual assault. The hearing was held and the petition denied. An aunt of the child testified at the hearing that J.H. was "a born liar", but on both direct and cross-examination admitted that the lies were about "minor things".

In *Antrobus v. State*, (1970) 253 Ind. 420, 254 N.E.2d 873, this Court held that it was error for the trial court to deny a defendant's petition for a mental examination of a witness. The sworn petition, considered by this Court in that case showed that the witness had a history of mental disturbances, and was uncontroverted. We said that because of the nature of the objection to the witness' competency, "an examination which would satisfy the trial court as to his competency would necessarily include an examination of the witness by a psychiatrist." *Id.*, 254 N.E.2d at 881.

In the present case, there was no evidence that J.H. had a history of mental illness, and the uncontroverted testimony concerned only the witness' credibility. Moreover, we have held that a defendant has no right, in a sex offense case, to subject the victim to a psychiatric examination. *Page v. State*, (1980) Ind. 410 N.E.2d 1304; *Holder v. State*, (1979) Ind. 396 N.E.2d 112. While the age of the victim called for a determination of her competency, no evidence indicated that she was mentally ill, and the question of credibility was one for the jury to resolve.

The court did not abuse its discretion in denying the petition.

B.

Indiana Code § 34–1–14–5, provides, in pertinent part:

"Witnesses who are incompetent.—The following persons shall not be competent witnesses: ... Children under ten years of age unless it appears that they understand the nature and obligation of an oath."

The trial court examined J.H. outside of the presence of the jury to determine her understanding and found that she was com-

petent. Staton argues that the court abused its discretion in light of the test set out in *Martin v. State*, (1969) 251 Ind. 587, 244 N.E.2d 100, and in light of the aunt's testimony that the child was a born liar.

■ In *Martin* we said, "The statutory presumption of incompetence is overcome when the child demonstrates an understanding of 'the nature and obligation of an oath' and there is no further test." *Id.*, 244 N.E.2d at 103. The test is whether the child understood the difference between telling a lie and telling the truth; and whether the child knew that she would be punished for telling a lie. On review for abuse of discretion, we said, "If there is some evidence in the record of the voir dire examination from which the trial court could have inferred that [the five-year-old witness] understood 'the nature and obligation of an oath', then this court must affirm the ruling." *Id.*

■ The following colloquy took place between the trial judge and J.H.:

"Q. Okay, what do you know about Jesus?

A. That he don't want you to lie. Wants you to tell the truth.

Q. Okay. If ... if you say that he doesn't want you to lie what ... what do you mean that he doesn't want you to do?

A. That if you tell a lie that you'll get punish [sic].

Q. Okay, what would happen if you did tell a lie.

A. You'd get punish [sic]."

The trial judge asked J.H. what a lie is. She answered by relating an incident in which she had played in a churchyard even though her mother had told her not to, and she told her mother that she had not played there. She told the judge that it was wrong, and that her mother punished her for the lie.

This was evidence that J.H. knew the difference between telling a lie and telling the truth and that she knew that she would be punished for telling a lie. This satisfied the test in *Martin*. As for the aunt's statement that J.H. was a born liar, the trial court was not bound to believe it. More importantly, it concerned credibility, rather than competency, as noted above.

The trial judge did not abuse its discretion in finding J.H. competent to testify.

### C.

■ The trial judge refused to hear testimony of two aunts regarding J.H.'s ability to understand the nature and obligation of an oath. He ruled that the competency determination in Ind. Code § 34–1–14–5, is to be based on the court's opportunity to examine and observe the witness. Staton offered no authority for the proposition that the court must go beyond its own examination and observation of the witness to resolve the question of competency, and he does not do so now. The trial judge's decision not to consider the aunts' testimony was within his discretion. The offer to prove shows that the testimony would have been substantially the same as that given at the hearing on the petition for a mental examination, and also that J.H. suffered from brain damage which rendered her unable to appreciate the obligation of an oath.

It was not error to refuse to hear this testimony regarding the competency of J.H. to testify.

### II.

■ Staton had expected a witness, Raymond White, to testify on his behalf as to an alibi. On the night before the trial, White was taken to the alcohol abuse unit at Central State Hospital and defense counsel sought the court's help in procuring his attendance at trial. Staton contends that the witness was under subpoena, that the State "shanghied" him to Central State Hospital, and that the trial court improperly refused to order the police to bring him back from the hospital. The record shows that the court held a hearing outside the presence of the jury to determine whether White was indeed under a subpoena. No evidence was introduced to show that White was ever served a subpoena to testify. In

the absence of such evidence, the court did not err in refusing to order the production of White. See *Craig v. State*, (1980) Ind. 404 N.E.2d 580. There was no evidence that the State "shanghied" the alibi witness.

### III.

Staton next contends that the trial court misled his counsel into believing that it would permit "unlimited voir dire" and then limited the scope of voir dire at the trial. He asserts, without citing any authority, that he should have been permitted to ask jurors the following question: "Will you require the State to convince you beyond a reasonable doubt that there was an effective waiver by the defendant of his constitutional rights [under *Miranda v. Arizona, infra*]?" The trial court told the jurors that the issue of waiver of rights under the *Miranda* decision is one for the court to determine, not the jury, and closed off further questions on the issue. The trial court was correct. Indiana Code § 35–5–5–1 provides:

> "In any criminal prosecution brought by the state of Indiana, a confession, as defined in section 5 hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence and hearing of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made, it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."

The trial judge permitted the jury to hear evidence on the voluntariness of a statement made by the defendant, but since, as we will discuss below, the statement was not given in response to interrogation while the defendant was in custody, the jury was not entitled to the instruction called for in the statute. Indiana Code § 35–5–5–4, provides:

> "Nothing contained in this act shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention."

There was no error in limiting the voir dire in this regard.

Staton also asserts that he should have been permitted to pursue a line of questioning regarding theories of sexual fantasies in young girls and specific facts about a social welfare case on which one of the prospective jurors had worked.

It would have been proper to question the one prospective juror who had experience in the child welfare field about whether his experiences might prejudice him as a juror.

The record shows that the defense counsel questioned prospective juror Bingham as follows:

> "Q. Mr. Bingham, if the evidence develops that the alleged victim, _____ told of two (2) other such incidents with favorite male men would you take that into consideration if you are selected as a juror?
>
> Q. Mr. Bingham, what is your understanding of the psychiatrists' theory as to sexual fantasies in young females?
>
> A. I don't know that I could really answer that question at this point in time cause it has been some time since I was involved in one of those cases. I recall a theory.
>
> Q. If I restated the theory for you would you recognize it?
>
> A. Yes, sir.
>
> Q. As I understand as psychiatric. . . .

OBJECTION SUSTAINED AS IMPROPER VOIR DIRE."

Bingham revealed that he had knowledge of another case of child molesting and defense counsel questioned him as follows:

> "Q. Would you tell us about that case?

A. I don't remember that much about it.

Q. Was it a criminal charge against an adult male?

A. Yes, it was.

Q. And were you acquainted with the girl ... the female?

A. She was a ward of the Welfare Department.

Q. How old was she if you recall?

A. Eight or nine.

Q. Was there criminal proceedings brought against the adult male?

A. Yes.

Q. Was he related?"

This inquiry went far beyond the limits of inquiring into prejudice, and in fact sought to inject an inference which was not supported. There was no assurance from defense counsel that J.H. had ever accused anyone of sexual misconduct before this incident, and in fact she denied doing so on three occasions during cross-examination.

"The extent of voir dire examination of the jurors may be restricted by the trial court to testing the capacity and the competency of prospective jurors. *Garrett v. State* (1973), [157] Ind.App. [426], 300 N.E.2d 696. In this respect, the trial court must be mindful that jurors are to be examined to eliminate bias, not to condition them to be receptive to the particular questioner's position. *Robinson v. State* (1973) 260 Ind. 517, 297 N.E.2d 409." *Merry v. State*, (1975) 166 Ind.App. 199, 214, 335 N.E.2d 249, 258.

There was no error in closing off voir dire on this line of questioning.

### IV.

■ Over Staton's objection, the court permitted Dr. Schemmer to testify that six months after the alleged crime, he removed venereal warts from the anus of J.H. He further testified that warts of this kind are caused by sexual relations with an infected person.

Staton contends that the testimony should not have been permitted because the State violated pre-trial discovery orders by not furnishing any notes, memoranda, or reports regarding the testimony of Dr. Schemmer. The State's response to the defendant's request for discovery in fact shows no written evidence in connection with Dr. Schemmer's testimony. But the transcript of the trial also shows that Dr. Schemmer did not submit a written report to the prosecutor's office. Staton claims that he was surprised by the testimony at trial, but Dr. Schemmer was available to be deposed. The court recessed the trial so that defense counsel could read a report the doctor had submitted to the Anderson Police.

Staton argues that the jury was prejudiced by the testimony because it was "revolting" and irrelevant. All testimony is relevant if it tends to prove or disprove a material fact in a case. *Larkin v. State*, (1979) Ind. 393 N.E.2d 180. The surgeon's testimony regarding the etiology and growth pattern of the warts tended to prove anal intercourse at the approximate time of the incident. It was relevant.

Staton also contends that the court erred when, after receiving a note from a spectator supposedly stating that the man living with J.H.'s mother had veneral warts, it failed to pass the information on to the jury. This contention is patently absurd.

There was no error in the admission of Dr. Schemmer's testimony.

### V.

Staton was picked up after the crime by a Madison County police officer and was driven to a restaurant where Hamilton County police arrested him. During the ride, Staton revealed that the incident occurred near a bridge in Hamilton County.

At trial, defense counsel brought this statement out on cross-examination of Sgt. Harp, the Madison County police officer. Staton contends that the court erred in overruling his objection to Harp's testimony about the statement, claiming that its introduction was a violation of rights secured by *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, because there

was no effective waiver of his right to silence.

In *Miranda*, the United States Supreme Court summarized the way in which the constitutional rights of individuals could be preserved in the face of overzealous police practices:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. at 1612.

Staton asserts that his ride with Sgt. Harp was custodial and that the statement was inadmissible because he was not advised of his rights and did not waive them. The State counters with a three-fold argument. First, it contends that *Miranda* warnings were not required because the ride was not custodial since Staton was merely invited to go along, he was told that he was not under arrest, and he went voluntarily. Even if the ride was, *arguendo*, custodial, the State contends that the statement was not elicited by interrogation and therefore was not inadmissible under *Miranda*. Second, it contends that there was no violation of the *Miranda* rule because the prosecution did not use the statements. The statement entered the evidence when defense counsel cross-examined Sgt. Harp about what occurred on the ride, and defense counsel objected when the prosecution brought up the subject in re-direct examination. Third, the State contends that the statement was merely cumulative of other evidence about the site of the incident.

■ We agree with Staton that he was in custody.

"By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612.

Sergeant Harp was directed to pick up Staton because Staton was suspected of molesting J.H. Harp identified himself to Staton as a police officer. Although Harp told Staton that he was not under arrest, he added that "he most likely would be before the evening was over." In *Johnson v. State*, (1978) Ind. 380 N.E.2d 1236, we held that a defendant was in custody when officers who had been directed to apprehend a suspect in a killing confronted the suspect on his front porch. Because he was clearly not free to leave, the defendant was "deprived of his freedom of action in a significant way." Similarly, although Sgt. Harp framed his bid to get Staton in the car as an invitation, the words, "he most likely would be [arrested] before the evening was over", belied the invitation and conveyed the idea that Staton was not free to leave.

If the statement were inadmissible because elicited in a custodial interrogation in the absence of sufficient warnings and effective waiver, we would not deem it harmless error because merely cumulative, as the State would have us do. The effect on a jury of a pre-trial inculpatory statement from the defendant's own mouth is too persuasive to dismiss as harmless.

■ The statement was not inadmissible, however, since it was not the product of "interrogation." The United States Supreme Court recently addressed, for the first time, the meaning of "interrogation" under *Miranda v. Arizona, supra. Rhode Island v. Innis*, (1980) 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. "Interrogation" includes, but is not limited to,

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way,"

quoting from *Miranda, supra*, 384 U.S. at 444, 86 S.Ct. at 1612. The safeguards of *Miranda* also apply to "techniques of persuasion, no less than express questioning ... [which] in a custodial setting ... amount to interrogation," the *Innis* court held. *Id.*, 100 S.Ct. at 1689. But this does not mean, the Court said, that all statements obtained by police from a person in custody are the product of interrogation.

" 'Interrogation', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion *above and beyond that inherent in custody itself.*" (Emphasis added.) *Id.*

The court concluded that the *Miranda* safeguards apply "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.*

The record reveals that Sgt. Harp did not expressly question Staton about the crime. Beyond a reference to "an incident" involving J.H., there was no discussion of the "incident". There is no evidence that Staton was subjected to the functional equivalent of questioning, and no evidence of any compulsion above and beyond that inherent in custody itself. There was evidence from which the court could have concluded beyond a reasonable doubt that the statement was given voluntarily in the course of the drive. See *Smith v. State*, (1981) Ind. 419 N.E.2d 743.

No error was committed in permitting the State to conduct redirect examination regarding the statement.

## VI.

The trial judge told defense counsel to "be silent" during the prosecutor's examination of J.H. Staton claims that this prejudiced the jury against his trial counsel. He concedes that this would not alone constitute reversible error but would do so only in conjunction with other prejudicial error. Since there is no other error and this claimed error is admittedly not reversible, we proceed to the next claim.

## VII.

■ Staton contends that the counts were not sustained by sufficient evidence of penetration of the vagina or anus of the victim that his "confession" did not admit such penetration, and that his motion for a directed verdict under Ind.R.Tr.P. 50 should have been granted.

On review of claims of insufficient evidence, this Court does not weigh the evidence or resolve of credibility but looks to the evidence and reasonable inferences therefrom that support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657; *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890.

The record shows that J.H. testified that on July 29, 1979, Staton, her uncle, took her to a bridge, pulled down her pants, laid her down, pulled down his pants, and "stuck his privacy" in her "privacy". She testified that she "hollered" because it hurt and that Staton then "stuck his privacy" in her "bottom." This testimony alone would have been sufficient to support the conviction, *Riddle v. State*, (1980) Ind. 402 N.E.2d 958. The testimony of J.H. was corroborated by her mother who testified that her daughter left with her uncle on the day of the visit and returned alone later. The mother testified that she discovered "some little bit of blood on [J.H.'s] 'bottom'," and took her to the hospital.

Dr. Mosher testified that she examined J.H. when the mother brought the child into the emergency room of St. John's Hospital on July 29, 1979, and found scratches and contusions on her body and dirt and grass in the area around her anus and vagina. Dr. Schemmer testified that J.H. had venereal warts which are caused only through sexual contact. In addition Officer Stanley testified that after Staton was advised of his rights to remain silent and to have a lawyer, he led police to the scene of the crime and in answer to a question denied that he had put his penis into the victim's rectum and said that he put it "where he was supposed to."

There was sufficient evidence to warrant the finding of guilt beyond a reasonable doubt.

## VIII.

■ Finally, Staton claims that the trial court erred in refusing several of his tendered final instructions.

Defendant's tendered Final Instruction No. 1 was:

"There were certain witnesses for the State that were not called to testify in this trial. I instruct you that if the State of Indiana does not explain the reason that they were not called, you may assume that their testimony would have been favorable to the defendant."

Similarly, Tendered Instructions 4, 5, 6, and 7 all instructed that the State's failure to call witnesses permits an inference that the absent witnesses would have given testimony vindicating the defendant. No argument is presented and no authority is cited in support of the proposition set forth in these instructions. This issue is therefore not before us. Ind.R.App.P. 8.3(A).

We note, however, that the defense had access to these witnesses for any vindicating testimony they might have offered.

Defendant's Tendered Instruction No. 2 was as follows:

"The term 'deviate conduct' on a child under 12 years of age as used in the statute means any child and all illegal acts as defined to you in another instruction. The State of Indiana in this cause has alleged only two deviate acts by the defendant Richard Staton upon the person of ____, to-wit sexual intercourse and inserting his sexual organ in the anus of ____. If you believe that the defendant committed other acts of deviate conduct not specified in the affidavit, then I instruct you that those acts alone will not sustain a verdict of guilty and you should find the defendant not guilty as charged."

Staton claims that there was evidence of other deviate conduct, that is the pulling down of J.H.'s pants. Again, no authority is cited in support of the contention that refusal of the instruction was error, and no argument. This issue is similarly not reviewable.

The conviction is affirmed.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result with opinion.

HUNTER, Justice, concurring in result.

I concur in ·the result reached by the majority, as well as its disposition of all allegations of error raised by defendant excepting issue "I(C)." In my opinion, the trial court erred in refusing to hear the testimony of J.H.'s aunts on the question whether she, a child nine years old, was competent to testify.

By statute, children under the age of ten years are presumed incompetent to testify in our courts of law. Ind.Code § 34–1–14–5 (Burns 1973); *Martin v. State*, (1969) 251 Ind. 587, 244 N.E.2d 100. Ind.Code § 34–1–14–5, *supra*, reads in pertinent part:

"The following persons shall not be competent witnesses:

\*      \*      \*      \*      \*      \*

"Second. Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath."

Pursuant to *Martin v. State, supra*, the determination whether the child "understands the nature and obligation of the oath" sufficiently to overcome the statutory presumption may be based solely on the trial court's examination of the child.

I do not think it wise to interpret *Martin* to provide the trial court with unfettered discretion to arbitrarily refuse to hear testimony from other witnesses which bears on the competency of a child to testify. It is one thing to permit the trial court to elevate the child's testimony above that of other witnesses; it is another matter, however, to say that the court need not bother even to listen to witnesses whose testimony bears on the question. That is indeed a peculiar rule of law in view of the fact our legislature has deemed children less than ten years of age *presumptively incompetent* to testify.

Moreover, in the circumstances of this case, the rule is an affront to the numerous cases wherein this Court has emphasized that where evidence of guilt rests on the

testimony of one person, the testimony should be closely scrutinized. *See, e. g., Richardson v. State,* (1979) Ind. 388 N.E.2d 488; *Lottie v. State,* (1974) 262 Ind. 124, 311 N.E.2d 800; *Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658; *Penn v. State,* (1957) 237 Ind. 374, 146 N.E.2d 240. As we stated in *Gaddis,* "This court must be particularly vigilant where a conviction is supported by the testimony of one eyewitness." 253 Ind. at 80, 251 N.E.2d at 661.

While our concern was expressed in the context of analyses of the sufficiency of the evidence in those cases cited, it would be anomalous to say the matter is of no consequence to whether a nine-year old child, as sole eyewitness to the alleged offense, should be adjudged competent to testify. Rather, the statutory presumption of incompetency warrants our vigilance. And it would not unduly burden trial courts to take the time necessary to implement that concern.

To be sure, trial courts should have discretion to refuse to hear irrelevant or repetitive testimony concerning a child's competency to testify. The court's discretionary powers should not embrace the capacity to bar evidence relevant to that matter which has not previously been offered. Here, the trial court should have permitted at least one aunt to testify concerning the alleged brain damage which rendered the nine-year old J.H. unable to appreciate the obligation of the oath. Whether any credibility could be attached to that claim is not the question; that determination would follow from the nature of the evidence presented to support the factual contention.

Notwithstanding the court's failure to permit at least one aunt to testify, the error cannot be characterized as reversible. That is so by virtue of our decision in *Martin v. State, supra,* whereby the court *may* base its determination of competency or incompetency solely on its examination of the child. In the face of J.H.'s testimony, it cannot be said the court's determination constituted the manifest abuse of discretion necessary to justify reversal. *Morgan v. State,* (1962) 243 Ind. 315, 185 N.E.2d 15.

Yet before any court adjudges any child younger than ten to be competent to testify, it is elementary that the court should expose itself to any relevant evidence the parties may wish to offer. Authority for that basic proposition does not seem necessary. It is, after all, simply a matter of how our criminal justice system should work; equally as significant, it is a matter of public confidence in the system. As Chief Justice Givan reiterated in *Watson v. State,* (1973) 261 Ind. 97, 99, 300 N.E.2d 354, 355:

"'It is important for all segments of our society to believe that our court systems dispense justice. This includes the criminals themselves as well as the law abiding citizens ...'" *Id.,* quoting *Dube v. State,* (1971) 257 Ind. 398, 407, 275 N.E.2d 7, 11.

Unfettered discretionary power in our trial courts to arbitrarily exclude evidence concerning a nine-year old child's competency to testify, where the child is the sole eyewitness, only serves to diminish confidence in the impartiality of our tribunals. That is both unnecessary and unfortunate.

For all the foregoing reasons, I concur in result.

Concur in result.