James OLDHAM, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1–184A24.

Court of Appeals of Indiana,
First District.

Aug. 16, 1984.

Rehearing Denied Oct. 11, 1984.

Jeffery L. Lantz, Lantz, Shaw & Corbett, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

James Oldham appeals his convictions of two counts of attempted child molesting, class C felonies.

We affirm.

The informations charged that Oldham had exposed himself to three girls under twelve years of age and that he attempted to have them touch his exposed penis. These events occurred on a school playground where the children were playing.

Oldham argues the trial court erred by allowing two of the three children to testify at trial because they were incompetent witnesses due to their age; both were six years of age. Oldham relies on IND.CODE 34-1-14-5 which states children under ten years of age are incompetent to be witnesses unless it appears that they understand the nature and obligation of an oath.

It is the trial court's responsibility to determine whether a child is competent to testify. *Staton v. State*, (1981) Ind., 428 N.E.2d 1203. The trial court's decision will

only be reversed for an abuse of discretion. *Id.* The test for determining a child's understanding of an oath is whether the child understands the difference between telling the truth and telling a lie; and whether the child understands she will be punished for telling a lie. *Id.* If the record of voir dire contains evidence from which the trial court could have inferred the child understood the nature and obligation of an oath, the trial court's ruling must be affirmed. *Id.* Children who were five years of age have been found to be competent witnesses. *Buttram v. State*, (1978) 269 Ind. 598, 382 N.E.2d 166.

■ In the case at bar, the record reveals the trial court questioned both witnesses at length, and observed the prosecutor question them, about whether they understood the difference between a lie and the truth. The witnesses responded that telling a lie is bad, that they would tell the truth at trial and that they had been punished for telling lies. The trial court did not abuse its discretion.

In a related argument, Oldham asserts the trial court erred by admitting into evidence two statements the police took from the girls after the crimes occurred.

■ Part of this argument is based on the premise that the girls were incompetent witnesses both at the time they gave the statements and at trial. Oldham has not presented authority for the proposition that a determination of competency must be made prior to taking a witness's statement; therefore that portion of the argument is waived. Ind.Rules of Procedure, Appellate Rule 8.3. We have resolved the issue of the witnesses' competency to testify at trial to Oldham's detriment by upholding the trial court's competency ruling.

The rest of Oldham's argument pertaining to these extra-judicial statements is organized around the proposition that they were hearsay and should not have been admissible as substantive evidence. Oldham recognizes that out of court statements can be admitted at trial as substantive evidence in some situations pursuant to *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. However, he also argues a proper foundation must be laid before such statements are admissible. Relying primarily on *Carter v. State*, (1980) Ind. App., 412 N.E.2d 825, Oldham claims an extrajudicial statement must be acknowledged by the declarant or authenticated by an audio or video recording before it can be admitted as substantive evidence. Neither witness in the case at bar could read or write except that they could identify their signatures. The girls acknowledged their statements after the prosecutor had read them aloud and they acknowledged their signatures. Oldham challenges the adequacy of this procedure. Because of their age and inability to read, he concludes the girls were incapable of acknowledging their statements.

Interwoven with the acknowledgment issue are Oldham's assertions that he was denied the opportunity to effectively cross-examine the girls at trial, because the typed statements did not contain everything they had told the police, and at the time they gave their statements to the police because he was not present.

■ We have no quarrel with Oldham's view that *Carter* requires a foundation to be laid before extrajudicial statements can be admitted for the truth and veracity of their content, however the acknowledgments in this case were sufficient. The record reveals that the prosecutor questioned the witnesses in detail about their recollections of giving the statements. He read the statements in their entirety. In response to this question, the girls indicated that they remembered the questions the police had asked and the responses they had given.

The limitation imposed in *Carter* applies to situations where a witness denies making an extrajudicial statement or cannot remember making it. Even in those situations, the court refused to impose a blanket exclusion and specifically discussed acceptable exceptions when a statement has been written or taped and the writing or tape can be authenticated. 412 N.E.2d at 831–

832 n. 4. The court in *Carter* did not say a tape is necessary to authenticate statements.

■ We also note that although Oldham's argument concerning the childrens' inability to acknowledge their statements is superficially persuasive, it is illogical under closer scrutiny. A child can be found competent to testify at trial and in turn will testify from memory about events. *E.g. Buttram v. State, supra.* Once a child has been found competent and sworn to tell the truth, we fail to see why age should disqualify him from testifying about a statement he gave police when he can testify about events underlying his statement. The witness's memory can be challenged to attack his credibility, as any witness can be attacked regardless of his age.

■ Oldham's allegations that he was denied effective cross-examination because he was not present when the girls gave their statements to the police reflects a misunderstanding of *Patterson, supra* and *Carter, supra.* In relation to extrajudicial statements, the right to cross-examine is preserved if the witnesses are available at trial for cross-examination; indeed that is one major point made in *Patterson.* In this case, the witnesses were "available for cross-examination" because they took the stand and acknowledged their statements. In fact, they were subjected to cross-examination. Oldham was not denied an opportunity to effectively cross-examine the witnesses about their statements. *Carter v. State, supra.*

Oldham's contention that the statements are inaccurate because they are incomplete has not been sufficiently developed for us to determine error occurred. Oldham asked the girls if they had said anything to the police that was not contained in their written statements and both responded that they had said other things. Oldham argues that the girls may have made statements exculpating him, but that because he did know their content, he could not adequately cross-examine the girls.

■ Oldham never went beyond his initial question to the girls and asked them precisely what else they had told police. He did not make any attempt to do so that was limited by the trial court. His failure to pursue the matter and to discover the relevancy and exculpatory potential of anything the girls may have said to the police puts the responsibility for incomplete cross-examination on his shoulders.

Additionally, the girls testified the written statements accurately reflected what they had told the police. The written statements included inconsistencies that potentially damaged the girls' credibility and aided Oldham's defense. *See, Mitchell v. State,* (1972) 259 Ind. 418, 287 N.E.2d 860. We find no error in the admission of the girls' extrajudicial statements.

Next, Oldham argues the trial court erred by failing to suppress an incriminating statement he made to police after undergoing a polygraph exam without having counsel present. Oldham claims his rights under the Fifth, Sixth and Fourteenth Amendments were violated.

A polygraph examination was originally scheduled at the defendant's request for the morning of August 15, 1983. The police officer responsible for administering the polygraph test was called away from the jail and the test was postponed. At approximately 1:00 p.m., the officer returned and went to escort the defendant to the polygraph test. The defendant expressed a desire to talk with his lawyer and was given opportunity to call him, but defense counsel was at court and was unavailable. According to Oldham, another officer told him that if he were Oldham, he would take the test. Oldham was also told that if he waited for his lawyer the test would have to be rescheduled. Oldham expressed his preference to have his attorney present, but indicated he would proceed with the test. The examining officer advised Oldham of his rights by reading a printed statement of "Miranda Rights" to him. Oldham was also told that he could stop responding at any time and that he could request counsel at any time. Oldham

signed the form as his acknowledgment of these rights and he stated that although he would prefer to have his lawyer present, he would go ahead with the test.

The test was given and the administering officer told Oldham his answers indicated that he was being deceptive. After the test, in the holding cell prior to taking Oldham back to his cell, the officer conducted a "post-test discussion". The officer asked the defendant if there was any way the questions could be restructured and asked him what he had been thinking about that might have caused a deceptive response. Oldham told the officer he could think of no reason for the test results unless he had committed the crime. Then the officer told Oldham he would have to take him back to his cell. They went up a flight of stairs and were waiting for an elevator. The officer told Oldham that he should contact his attorney and discuss the test results. At this point, Oldham told the officer he had exposed himself to the girls, but denied touching them. This statement was introduced at trial.

The gist of Oldham's argument is that the police improperly influenced him and that he did not make a knowing and intelligent waiver of his rights. Implicit in the argument is the assertion that the police should have again advised Oldham of his rights after the polygraph was given.

 The State bears the burden of proving beyond a reasonable doubt that a defendant has waived his constitutional rights and voluntarily made an incriminating statement. *Grassmyer v. State,* (1981) Ind.App., 429 N.E.2d 248. The State must show the defendant was not influenced by violence, threats, promises or other improper influences that overcame his free will. *Id.* We look at the totality of the circumstances surrounding the statement in determining whether the State has met its burden. *Ortiz v. State,* (1976) 265 Ind. 549, 356 N.E.2d 1188. We do not weigh the evidence, but instead examine the record to see if sufficient evidence supports the trial court's ruling. *Grassmyer, supra; Ortiz, supra.*

 Although it may have been more advisable for the police to have rescheduled the polygraph, the trial court's decision to admit Oldham's incriminating statement is supported by sufficient evidence. Oldham was advised of his rights and he chose to waive them. The police did not dominate his free will; they did not use promises or threats. *Grassmyer* is factually analogous to this case and the supreme court upheld the admissibility of the defendant's confession. The police did not engage in a concerted effort over a period of time in an attempt to overcome Oldham's free will while he was without counsel, unlike the facts in *Brewer v. Williams,* (1977) 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. Oldham was not entitled to another set of warnings about his rights when the police officer spoke with him after the polygraph examination was given. *Wyrick v. Fields,* (1982) 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214. The original waiver of his rights covered the entire transaction. *Id.*

Oldham challenges the admission into evidence of a statement he made to police in which he admitted exposing himself to other young girls and masturbating in their presence. He recognizes evidence of prior sexual acts is admissible to show a depraved instinct, but claims the acts he admitted were too remote in time to be relevant. He also argues the acts do not necessarily prove a depraved sexual instinct.

 The acts Oldham admitted related to sexual gratification with children and therefore were sufficiently similar to the charged offenses to show a depraved sexual instinct. *Bowen v. State,* (1975), 263 Ind. 558, 334 N.E.2d 691. Such evidence can be excluded for remoteness. *Bowen, supra,* but Oldham has not shown the acts were remote enough to require exclusion. He concludes they were remote because one of the girls, his niece, was married by the time of trial. We cannot conclude the trial court abused its discretion. *Kerlin v. State,* (1970) 255 Ind. 420, 265 N.E.2d 22 (a case where the prior sexu-

al acts occurred almost eight years before the charged offense).

Oldham argues the trial court should have granted his motion for a mistrial when a police officer testifying about a photographic display referred to it as a "book of sex offenders". Oldham argues he was prejudiced by being classified as a sex offender in front of the jury when he had no prior history of sex crimes.

 Denial of a mistrial is only reviewable for an abuse of the trial court's discretion. *Morgan v. State*, (1981) Ind., 419 N.E.2d 964. The defendant must show he was placed in a position of grave peril to which he should not have been subjected. *Id.* Oldham was not placed in grave peril. After defense counsel objected to the reference to a "book of sex offenders", the officer explained the book was used for a photographic display from which the girls identified the defendant. The officer explained that he had inserted Oldham's photograph into the book for display purposes and that Oldham was not a "sex offender". We find no error.

Last, the defendant charges the trial court erred by refusing his tendered instruction pertaining to the evidence of his prior sexual acts with children. The instruction admonished the jury that this evidence was to only be considered in determining whether Oldham had a depraved sexual instinct and was not to be considered as proof of his guilt or innocence. The instruction also told the jury it was only to consider such prior sexual acts if the State proved them beyond a reasonable doubt.

 The instruction was properly refused because it contained an incorrect statement of the law. The State must only prove the essential elements of a crime beyond a reasonable doubt. *Davis v. State*, (1968) 251 Ind. 201, 240 N.E.2d 54; *Powell v. State*, (1968) 250 Ind. 663, 237 N.E.2d 95.

The judgment is affirmed.

NEAL, P.J., and RATLIFF, J., concur.