**STATE of Indiana, Appellant,**

v.

**Timothy O. BOWEN, Appellee.**

**No. 1–1185A292.**

Court of Appeals of Indiana,
First District.

April 29, 1986.

---

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

J. Donald Dwyer, Washington, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

The State of Indiana (State) brings an interlocutory appeal from an order entered by the Daviess Circuit Court suppressing a statement made by defendant-appellee, Timothy O. Bowen (Bowen).

We reverse.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Daviess County police officers were notified that Melvin and Evadean Bainter, husband and wife, had been stabbed in their mobile home in the early morning of November 5, 1984. At the hospital, Evadean told the officers that her son, Bowen, had stabbed them. Officers then went to the mobile home, found Bowen still there, and asked him to come out to talk to them about the stabbing. Bowen refused, lectured the officers at length on arrest procedure, and demanded a warrant. He also demanded to see a judge, but he was told no judge was available. However, the officers told him if he wanted to talk to a lawyer, one would be appointed. There is some evidence that he did wish to talk to a lawyer. During the 45 minute standoff, conversation consisted only of trying to get Bowen to come out to talk about the stabbing. During that time the officers learned by radio that Melvin had died, but they decided not to tell Bowen lest such information provoke a violent reaction.

Finally, after an officer had slipped into the mobile home, Bowen was captured, placed under arrest, and handcuffed. No Miranda warnings were given to him, nor was he interrogated at this point. However, in the mobile home Bowen spontaneously stated that Evadean, in the past, had cut him with a razor, and he exhibited his scar to the officers. Bowen also said that he had been shot that morning by a BB or pellet gun by Melvin, and he exhibited to the officer a tiny wound covered by a smudge of dried blood.

Upon Bowen's request that a doctor look at his wound, he was taken to the same hospital where Melvin and Evadean had been taken. The only conversation between the officers and Bowen on the trip was small talk unrelated to the case. At the hospital, while waiting to have Bowen's wound tended, one of the officers went into the hospital and confirmed Melvin's death. When the officer came out, in answer to Bowen's inquiry as to Melvin's condition, he told Bowen that Melvin had died. Bowen then broke down and cried convulsively, and he admitted that he did it. Up to this point there had been no Miranda warnings given to Bowen, but also there had been no interrogation. The inculpatory statement was a volunteered, spontaneous statement.

The trial court granted Bowen's motion to suppress the above admission given at the hospital. The trial judge stated that the officers should have given Bowen the Miranda warnings at the very onset of the confrontation. He stated that "while any one incident might arguably not required [sic] Miranda advisement, the sequence and nature of events taken as a whole required rights to be explained to the defendant well before the alleged statements were made."

## ISSUE

The sole issue on appeal is whether the trial court erred in suppressing the statement voluntarily made while in custody but not while being subjected to interrogation.

## DISCUSSION AND DECISION

 Under the Miranda doctrine, a statement is not inadmissible if it is not the product of custodial interrogation. Staton v. State (1981), Ind., 428 N.E.2d 1203. Custodial interrogation includes, but is not limited to, questioning initiated by law enforcement officers after an accused has been deprived of his freedom in any significant way. Id. Miranda also applies to techniques of persuasion no less than express questioning in a custodial setting. Id. However, it does not mean that all statements obtained by police from a person in custody are the product of interrogation. Id. Interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. Id. Where there is no express questioning or its functional equivalent, and no evidence of compulsion beyond that inherent in the custody itself, a volunteered statement is admissible, and Miranda is not applicable. Id. Verbal efforts to obtain an accused's surrender or to prevent him from committing suicide or injury to others is not interroga-

tion. *Romine v. State* (1983), Ind., 455 N.E.2d 911. Statements made while in custody which are the product of remorse and the discomfort of silence in face of implicit accusations are not subject to the *Miranda* doctrine. *Id.* Wholly volunteered and unsolicited statements are not inadmissible because *Miranda* warnings were not given. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214; *Woolston v. State* (1983), Ind., 453 N.E.2d 965. *Miranda* rights must only be read prior to custodial interrogation, and this request does not apply to volunteered statements. *Woolson, supra.* Officers are not required to give *Miranda* warnings, even assuming they have an opportunity to do so. *Lowery, supra.* Casual conversation by an officer with an accused about matters not concerned with the case is not interrogation. *Lowery, supra; Smith v. State* (1981), 275 Ind. 642, 419 N.E.2d 743. Not every statement made by a police officer is interrogation. *Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219.

These controlling cases have been applied to defeat an accused's challenge to admissibility of statements based upon the *Miranda* doctrine. They have been applied to a variety of situations where an accused made voluntary statements while in the custody of police and while not being subjected to interrogation. They have been applied where an accused is being transported, retained, or in a hospital. As applied in *Woolston,* the defendant, badly wounded and in a hospital, made a voluntary statement and then became unconscious, but the statement was admissible. Likewise, as applied in *Romine,* the give-and-take between an officer and an accused who threatened suicide and the statements made by the accused in remorse for the act were admissible.

 Bowen cites no authority in point which holds contrary to the above cases cited by the State. His authorities discuss the general doctrines of voluntariness of statements, general *Miranda* principles and the like. Instead, Bowen argues that the facts and circumstances surrounding the incident and his statement show that the admission was not voluntarily given. He seems to argue that since the officers had information that he had allegedly stabbed his mother, Evadean, and his stepfather, Melvin, and that the officers went to the trailer with the intent of interrogating him, misled him about Melvin's death and the resulting enhanced crime, did not give him *Miranda* warnings, and dropped Melvin's death on him like a bomb, such was compulsion as surely as interrogation. He accuses the officers of simply waiting to see what he would do and allowing him to talk.

The realities of the situation confronting the officers was that Bowen, accused by his mother of stabbing her and killing her husband, was potentially very dangerous, possibly armed, and perhaps mentally deranged. Whatever was said during the 45-minute standoff could not, by any stretch of the imagination, be considered custodial interrogation. The officers were totally justified in withholding the matter of Melvin's death from Bowen to avoid a violent reaction. They were further justified in any subterfuge which could effect Bowen's capture without the necessity of a gun battle in which Bowen and officers may be killed or injured. It would be facetious to say that while officers were trying to capture a barricaded suspected murderer, or trying to talk him out of his refuge, they must shout *Miranda* warnings at him.

After Bowen's arrest, there was no evidence whatsoever of any interrogation of him by the officers. His presence at the hospital was a result of his own request on account of his slight wound. It was he who asked of Melvin's condition. There was no evidence of any compulsion on the part of the officers. There was no evidence of a plan to extort a confession from Bowen.

 As in *Romine,* Bowen's unsolicited, voluntary confession was the product of remorse, not the result of any compulsion by police officers. An accused's inner compulsion, born of unbearable moral guilt,

to confess or to talk about the deed, is not such compulsion which renders his statement excludable under *Miranda*. Rather, it is compulsion initiated by police officers by express custodial interrogation, or its functional equivalent, which in absence of proper *Miranda* warnings, makes the statement excludable. The pressures brought to bear upon Bowen which caused him to blurt out his confession were no different than the pressures resting upon the accused in the above cases where they were under arrest and charged with serious crimes. Nevertheless, the supreme court held in those cases that the volunteered statements were admissible.

For the above reasons, this cause is reversed and the trial court is ordered to overrule the motion to suppress.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.