**Burl POE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 382S117.**

Supreme Court of Indiana.

Feb. 22, 1983.

Charles H. Ireland, North Manchester, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Arson, Ind.Code § 35–43–1–1 (Burns 1979), Conspiracy to Commit Arson, Ind.Code § 35–41–5–2 (Burns 1979), and being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1982), and sentenced to a total of fifty (50) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court denied Defendant's right to a speedy trial under Ind. R.Crim.P. 4(B).

(2) Whether the trial court erred in refusing Defendant's tendered instruction upon the defense of Entrapment.

(3) Whether Defendant was denied his Sixth Amendment right to counsel.

(4) Whether the trial court erred in refusing Defendant's tendered instruction upon the defense of Voluntary Intoxication.

(5) Whether the evidence is sufficient to sustain the finding of habitual offender status.

\* \* \*

### ISSUE I

Defendant first appeared before the trial court on May 20, 1981. At that time he requested the appointment of pauper counsel. The court interviewed him and he admitted that he owned a substantial interest in some real estate but stated that he had no job or money and had six children to support. The court then stated:

> "I'll appoint an attorney to determine whether you have equity in that real estate or not. When he reports back to me I'll make a decision as to whether to appoint a pauper counsel or not." R. at 158.

Thereafter pauper counsel was appointed on July 28, 1981 and such counsel was notified of the appointment on July 30, 1981. On August 18, 1981, he moved for dismissal and a discharge.

Defendant contends that because he was without counsel from May 20, 1981 until July 28, 1981, a total of sixty-nine (69) days, he was denied the opportunity to invoke the seventy day speedy trial provision of Crimi-

nal Rule 4(B). Although he admits the facts of his case are not identical he analogizes his situation to the one presented in *State v. Roberts,* (1976) 171 Ind.App. 537, 358 N.E.2d 181.

In *Roberts,* the accused, had been held in custody for fifty (50) days before he was charged or brought before the court. The Court of Appeals held that he was entitled to discharge, not for failing to bring him to trial within the time limitations of Criminal Rule 4(B) but for delaying for an unreasonable period of time, under the circumstances, the filing of charges following his arrest and incarceration. "What constitutes a reasonable period will assuredly vary on a case to case analysis, but in the instant case we find no justification for a 50 day delay between the arrest and the affidavit." *Id.* at 541, 358 N.E.2d at 183. The court proceeded to point out that it was implicit in Criminal Rule 4(B) that the accused would be given an opportunity to request a speedy trial.

In the case·before us, there has been no showing that there had been any unreasonable delay in the court's appointment of pauper counsel for the defendant; and it does not appear to us that the delay was unreasonable, under the circumstances.

■ The decision to appoint pauper counsel lies within the exclusive province of the trial court. *Thompson v. State,* (1971) 256 Ind. 48, 54, 267 N.E.2d 49, 52. That determination ought not to be hastily or superficially made. *Moore v. State,* (1980) Ind., 401 N.E.2d 676, 679.

■ Additionally, the record belies Defendant's claim that the delay in appointing counsel precluded his asking for an early trial. He filed such a motion, pro-se, on June 30, 1981, which was forty-one days following his arrest and thirty-eight days following the filing of the information. His trial was commenced on September 2, 1981, sixty-four days later.

## ISSUE II

Defendant next contends that the trial court erred in refusing his tendered instruction upon the defense of Entrapment. He presents a lengthy recitation of his cross-examination of the State's evidence as having implicitly raised the defense of entrapment and as having provided evidence from which the jury could have inferred conduct induced by the police.

■ At trial, Defendant presented no evidence other than to recall a State's witness. On the State's case in chief that witness had testified that Defendant, whom he knew, had approached him in a tavern:

"Well what happened then, he called him, he came back to the table and said, well I got a quick way of making some money if you want to do it. And I asked him what it was, and he explained to me that he had talked to this man and he had offered him Six Thousand Dollars to burn his house down. So I thought it over and we went ahead and drank that night and we went ahead and made arrangements, you know he told me, are you going to do it, you know, make up your mind, so I called Mr. Holderman that night and talked to him." R. at 227.

Mr. Holderman was a police officer to whom Defendant had relayed information as the Conspiracy and Arson unfolded. The arrangements, of which Defendant spoke, resulted in the burning of a building, an act in which Defendant had participated with the witness. This evidence clearly relates a predisposition of Defendant to commit both Conspiracy and Arson. It was not challenged at trial by contradictory evidence. Additionally, Defendant's cross-examination, at most, revealed that the police had but passively furnished an opportunity to commit the crime in that they did not interfere.

"When the state has presented evidence of a predisposition to commit the charged crime, and the defendant has not presented *any* contradictory evidence, an instruction on the defense of entrapment is unnecessary. Such an entrapment instruction would only serve to confuse the jury." *Cyrus v. State,* (1978) 269 Ind. 461, 464, 381 N.E.2d 472, 474, *cert. denied,* (1979) 441 U.S. 935, 99 S.Ct. 2058, 60 L.Ed.2d 664.

Given the uncontradicted evidence of Defendant's predisposition, there was no question of entrapment for the jury to consider, and the trial court did not err in refusing the tendered instruction.

### ISSUE III

Under this assignment that he was denied his Sixth Amendment right to counsel, Defendant makes two unrelated claims.

■ Defendant first contends that the trial court denied him the effective assistance of counsel when it sustained the State's motion in limine to preclude defense counsel from presenting the entrapment defense in argument. However, we have held under Issue II herein that such defense was not in issue under the evidence. It follows that there was no error committed in prohibiting the presentation of that theory in argument.

■ Secondly, Defendant contends that the sixty-nine day delay by the court in appointing pauper counsel was not justifiable and was, therefore, a denial of counsel during critical stages of the proceedings and harmed him as hereinafter set forth. His arguments, however, are based upon faulty premises.

At the outset, we have hereinbefore determined that an unreasonable delay in the appointment of counsel had not been shown.

Next, we observe that if a delay was occasioned in bringing Defendant to trial, it was, nevertheless, reasonable, under the circumstances. There is, therefore, no merit to Defendant's claim that he lost his right to a speedy trial.

Defendant's claim that the delay precluded him from objecting to the State's filing of an amended information is also baseless. Apparently the amended charge was filed prior to the appointment of counsel. However, if such filing was improper and harmful, objection should have been made following counsel's appearance. We can only regard his failure to do so as a tactical decision.

■ Defendant also charges that the delay resulted in his loss of the right to an automatic change of judge inasmuch as our Ind.R.Crim.P. 12 was amended in the interim. However, he has not shown us that he sought and was denied a change of judge. That the rule was changed does not give rise to a presumption that Defendant, otherwise, would have exercised a right that he would have had but for such change.

■ Defendant has also made vague references to his trial preparation opportunities having been restricted because of the delay in the appointment of counsel. Again, however, he has made no specific claim as to impediments encountered or how he was thereby harmed. No claim whatever has been made that counsel had insufficient time, following his appointment, to prepare adequately for trial. Rather, it appears that Defendant stood upon his right to an early trial invoked by his pro se motion.

### ISSUE IV

Defendant next contends that the trial court erred in refusing his tendered instruction upon the defense of intoxication:

"Although intoxication or drunkenness alone will never provide a legal excuse for commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent. So evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted or failed to act, with specific intent, as charged.

"If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the mind of the accused is capable of forming, or did form, specific intent to commit the crime charged, the jury should acquit the accused." R. at 88.

This instruction was properly refused by the trial court.

 The defense of voluntary intoxication is applicable only to those offenses which, in the language of their statutory definitions, are committed "with intent to" or "with an intention to." Ind.Code § 35–41–3–5(b) (Burns Supp.1982). In this case voluntary intoxication, if proved, was a defense only to Conspiracy and not to Arson, because the offense of Arson is not required to be committed "with an intent to" or "with an intention to." *Myers v. State,* (1981) Ind.App., 422 N.E.2d 745, 750–51. Defendant tendered no additional instruction, which would have limited the application of the defense to the conspiracy count. Consequently, his instruction was, contextually, an incorrect statement of the law. Without modification, it would have misled the jury into thinking that voluntary intoxication is a defense to Arson.

### ISSUE V

Finally, Defendant challenges the sufficiency of the evidence upon the habitual offender finding. He contends that, with respect to one of the alleged prior felony convictions, the State did not prove that he was the person named in the documentary evidence of the conviction. At trial, Defendant's former attorney, who had represented him in the aforementioned prior proceeding, testified as follows:

"Q. Your cause number—the Huntington County case was designated State vs Burl Gene Poe. Is that the same as Burl Poe who is here today?

"A. As far as I know." R. at 277–78.

 Defendant correctly notes that this is the only evidence linking him to the Burl Gene Poe named in the documentary evidence; however, he is in error in asserting that the jury could not infer from this evidence that he and the Burl Gene Poe named in the documentary evidence are one in the same. A witness may testify upon the issue of the identification of the accused in the form of an opinion or belief, and such testimony, standing alone, is sufficient to support a finding upon the issue of identification of the accused. *Medsker v. State,* (1946) 224 Ind. 587, 590, 70 N.E.2d 182, 183. Defendant's argument is without merit.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.