Larry MAYES, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1282S463.

Supreme Court of Indiana.

Sept. 11, 1984.

Charles E. Enslen, Highland, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Rape, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979), Unlawful Deviate Conduct, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979), Robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979), and was found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1983). He was sentenced to a total of 110 years imprisonment. His direct appeal raises thirteen (13) issues which we have consolidated herein as eight (8) issues as follows:

1. Whether the evidence is sufficient to sustain the convictions;

2. Whether the trial court erred in denying Defendant's motion to exclude the testimony of the Prosecutrix inasmuch as

the State did not file an answer to Defendant's notice of alibi;

3. Whether the trial court erred in admitting the testimony of Mark Watson and Miriam Gates over the objection that the testimony was irrelevant and served only to prejudice the Defendant;

4. Whether the trial court erred in denying Defendant's motion for mistrial made following the testimony of Miriam Gates and renewed following the testimony of Mark Watson, said motion having been predicated upon the fact that Gates' testimony included hearsay evidence.

5. Whether the trial court erred in admitting State's Exhibit No. 13, a lineup information sheet, over Defendant's objection that it was hearsay;

6. Whether the trial court erred in admitting into evidence State's Exhibits Nos. 1–5 during the habitual offender phase of the proceedings;

7. Whether the trial court erred in denying Defendant's motion for mistrial predicated upon a comment made by the Prosecutor during his final argument in the habitual offender phase of the trial;

8. Whether the trial court erred in enhancing Defendant's sentence.

The record disclosed that on October 5, 1980, the Prosecutrix was employed as a cashier at a service station in Hammond, Indiana. While she was alone on duty at approximately 8:30 p.m., two young black males entered the station. The larger of the two men, subsequently identified as James Hill, drew a gun and demanded money. She complied with his demand and placed approximately $120.00 of her employer's money in a blue denim bag. Hill then walked around the counter and took an additional $10.00 or $20.00 from the change drawer. Meanwhile, the smaller man, identified as the Defendant, took items from the various display racks.

Stating that the money was not enough, the two men then forced her into the back seat of a large blue four-door luxury automobile. Hill sat in the back seat with her while the Defendant drove the vehicle. Af-

ter striking her with his gun, Hill forced her to perform fellatio and then raped her. The two men then exchanged places, and Defendant forced her to perform fellatio and raped her. When the two men released her, she went to a nearby house and telephoned her parents and the police.

## ISSUE I

At the outset we note our standard of review upon a claim of insufficient evidence:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant claims that inasmuch as the Prosecutrix first identified another man as the smaller of her assailants at a lineup on February 3, 1981, the evidence was not sufficient to prove that he committed the offenses. His argument is without merit.

On October 6, 1980, one day following the crime, the Prosecutrix was shown two arrays of eight to twelve (8 to 12) photographs each from which she chose two different photographs, both of which were pictures of the Defendant, whom she identified as the smaller of her two assailants. About one month later, after viewing several hundred photographs, she chose a photo of the larger assailant, James Hill. In December, 1980, she viewed a lineup from which she chose Hill as the larger of the two men.

In February, 1981, she viewed a second lineup. She looked only at the first man in line, number 5, and said "[n]umber five" and asked the police to let her out. An officer, however, asked her to study all of

the men in the lineup and to take her time in so doing. After hearing the man speak and taking several minutes to concentrate, she altered her prior statement and identified number 4, the Defendant, as the smaller assailant.

■ When asked at trial to explain her error, the Prosecutrix testified that immediately prior to the lineup she had been told to concentrate on the point in time when she had best seen the faces of her assailants. She stated that she had seen Defendant's face the best during the actual rape and that, while recalling that occurrence, she became so upset that she wanted only to leave the room. When she became more calm, however, and studied the men in the lineup, she was positive that number 4, the Defendant, was her assailant. Furthermore, without objection, she identified Defendant at trial. The uncorroborated testimony of the victim is sufficient to sustain the convictions. *Ives v. State,* (1981) Ind., 418 N.E.2d 220, 223. Moreover, identification testimony need not necessarily be unequivocal in order to sustain a conviction. *Johnson v. State,* (1982) Ind., 432 N.E.2d 1358, 1361.

## ISSUE II

Defendant was charged with having committed the instant offenses on October 5, 1980, in Lake County, Indiana. Subsequently, he filed and served upon the prosecuting attorney a notice that he planned to offer in his defense evidence of an alibi, that on October 5, 1980, he was attending a party at a particular residence, and that three persons would so testify. By presenting such notice, Defendant would be permitted, at trial, to offer evidence in support of his alibi, which, but for the giving of the notice, he would not be permitted to do. The State made no response to the notice of alibi because none was required. Ind.Code § 35-5-1-2 (Burns 1979) [repealed effective September 1, 1982; amended and recodified at Ind.Code § 35-36-4-2 (Burns Supp.1984)] requires the prosecuting attorney to serve upon a defendant, *if he so requests,* a statement of the exact date and place the defendant is charged with having committed the crime. In addition, the prosecuting attorney is required to provide an answer, if he is going to present, at trial, evidence that the crime occurred on a date other than the date specified in the defendant's notice. Defendant concedes that his notice of alibi did not specifically request an answer and that the prosecuting attorney did not present evidence at a variance from the notice. Nonetheless, he assigns as reversible error the trial court's overruling of his objection to the admission into evidence of any testimony by the Prosecutrix contradicting the declaration of his alibi notice. The objection, however, was properly overruled.

Defendant's reliance on *Quillen v. State,* (1979) 271 Ind. 251, 253, 391 N.E.2d 817, 819 and *Dew v. State,* (1981) Ind., 416 N.E.2d 1245, is misplaced. In *Quillen,* an answer to the alibi notice was filed specifying a date different from the one in the information, and this Court there held that the date critical to Quillen's defense was the one fixed by the State in its response to the notice. *Quillen* does not, however, hold that simply because a defendant files a notice of alibi the State is required to provide an answer to the notice or, ipso facto, be precluded from proving the charges of the information. In *Dew,* an answer to the notice of alibi was required inasmuch as the appellant requested a specific statement from the State regarding the date, time and place it planned to present as the date, time and place he was alleged to have committed the offenses.

An alibi notice serves a dual purpose: (1) It permits a defendant to give notice of his claim of having been at a place different from that specifically charged in the information at the time the crime was committed; and (2) It allows an accused to seek information that is more specific than that revealed by the information, to enable him to determine whether or not he has an alibi.

■ In the case at bar, there is no substantial variation between the time and place charged in the information and that declared in the Defendant's notice. More-

over, Defendant did not request a more specific statement as to the time and place of the commission of the crimes. Neither was there any variation in the time and place declared in the information and the evidence presented at trial. The trial court did not err in overruling Defendant's objection to the admission of the testimony of the Prosecutrix.

### ISSUES III and IV

Defendant's next two (2) assignments of error stem from the admission of testimony from State's witnesses, Mark Watson and Miriam Gates, by which it was disclosed that an earlier attempt to try the Defendant for the instant offenses had ended in a mistrial declared by reason of Defendant's attempt, through Watson, to enlist the aid of one of the jurors, Gates. Defendant made an in-trial motion in limine to prohibit the introduction of their testimony claiming that the evidence was not relevant and was highly prejudicial and inflammatory. The trial court heard their testimony outside the presence of the jury, overruled the objection, permitted the testimony, and instructed the jury that the testimony was not sufficient in and of itself to establish the guilt of the Defendant but that it was to be considered by them along with other evidence in the case.

Gates' testimony at the hearing on the motion in limine revealed that Watson, a long-time acquaintance, had telephoned her on three occasions, the first and second of which occurred on the day she had been selected to serve as a juror in Defendant's first trial. Watson was then incarcerated at the Lake County Jail and wanted to know how she had felt about the trial she had heard that day and told her that the "guy" was a friend of his and had done nothing wrong. She told Watson that she intended to report the telephone call to the court and to have herself excused from the jury. A few minutes later Gates received a second call from Watson who said that this "guy" wanted to know if she would help him by voting not guilty. He also asked her not to tell on him and get him in

trouble. Defendant had not been mentioned by name during either of these conversations. Gates reported the calls to the court, and a mistrial was declared. Three days later, Watson called Gates a third time to find out what had happened when she had reported the telephone calls and to convince her that when he had called her earlier he had been trying to help someone named Eugene Stanley, not the Defendant. Mark Watson testified that he had made all three telephone calls at Defendant's request and otherwise reiterated the testimony of Gates.

 The challenged testimony is relevant as revealing "consciousness of guilt" in that it is analogous to other types of evidence, such as flight, concealment, suppression, fabrication of evidence, or attempts to influence witnesses, which have been determined to be relevant for that purpose. *U.S. v. Bellomini,* (1978) D.C. Pa., 454 F.Supp. 44, 45; *See Washington v. State,* (1980) 273 Ind. 156, 160, 402 N.E.2d 1244, 1248 (accused attempted to enlist witness in scheme to suppress evidence) and *Matthew v. State,* (1975) 263 Ind. 672, 677, 337 N.E.2d 821, 824 (accused attempted by false testimony before grand jury to cover up evidence of guilt). The evidence is admissible so long as the accused was "privy" to the efforts to influence the juror. *See Barnes v. State,* (1980) 273 Ind. 245, 247, 403 N.E.2d 331, 332 (third person attempted to procure witness' absence or influence testimony at request of accused). In the case at bar, Watson testified that the Defendant requested that he (Watson) call his long-time acquaintance Miriam Gates who had been selected as a juror for the Defendant's trial. If Watson's testimony were believed by the jury, it could find that the Defendant instigated, suggested or approved of Watson's attempt to influence juror Gates.

 Defendant's claim that the testimony was so prejudicial that it should have been excluded is without merit. Trial courts have wide discretion in determining whether proffered evidence is relevant. We will not disturb the court's ruling upon

such a matter, absent a clear abuse of that discretion. *Parrish v. State*, (1983) Ind., 453 N.E.2d 234, 239; *Napier v. State*, (1983) Ind., 445 N.E.2d 1361, 1364. We find no abuse of discretion here, particularly in view of the admonishment given by the court that the evidence presented by the two witnesses was insufficient, standing alone, to establish Defendant's guilt.

■ Defendant also challenges the trial court's overruling of his motion for mistrial made after the testimony of Gates in the jury's presence and renewed following the testimony of Watson. Gates' testimony in the jury's presence was substantially the same as that given outside its presence, but she also revealed that during the third conversation with Watson she told him that Defendant had admitted that he had had someone call a juror. The mistrial motion was initially predicated upon Defendant's claim that Gates' testimony before the jury was substantially different from that given outside its presence. The trial court took the motion under advisement pending Watson's testimony. Following Watson's testimony, the motion was renewed, but the "inconsistent" argument was dropped. In fact, Defense counsel stated that inconsistencies probably favored the Defendant. He then argued that he was entitled to a mistrial because of hearsay in Gates' testimony before the jury linking the Defendant to the jury tampering. This, however, is not argued in the brief, but if it were, it would fail because Watson, who testified immediately after Gates, reiterated the challenged testimony when he stated that all of the calls he had made to Gates had been made at the Defendant's request and were for the purpose of enlisting her aid in Defendant's behalf. Such testimony had the same probative value as Gates' testimony, was properly in evidence, and was never refuted. "Error in the admission of evidence is harmless when other evidence having the same probative value is admitted without objection and is not refuted." *Walton v. State*, (1980) 272 Ind. 398, 401, 398 N.E.2d 667, 670. Hence, there was no error in denying the mistrial motion.

## ISSUE V

■ State's Exhibit No. 13 was a one page document entitled "Line-up Information." A police officer testified that he prepared the document following a lineup at which the Prosecutrix viewed five (5) suspects. He did not, however, sign the document. Defendant objected to the admission of the document, arguing that it was hearsay. However, inasmuch as the police officer who prepared the document was present at trial, testified that he prepared the document, and was available for cross-examination, there was no error in admitting the document into evidence. *Underhill v. State*, (1981) Ind., 428 N.E.2d 759, 765.

## ISSUE VI

■ Defendant assigns a number of errors in the admission, during the habitual offender phase of the proceedings, of State's Exhibits Nos. 1–5. With respect to Exhibit No. 1, an information and order of conviction and sentencing of the Defendant from the State of Michigan, he argues that it was not properly certified pursuant to Ind.Code § 34–1–18–7 (Burns 1979). He challenges the lack of a judicial certification of the clerk's status and the lack of judicial certification that the attestation was in due form of law. We agree with Defendant that these judicial certifications are absent; however, we have held that T.R. 44 provides a method of certification alternative to Ind.Code § 34–1–18–7. *Hernandez v. State*, (1982) Ind., 439 N.E.2d 625, 630. Exhibit No. 1 was certified by the Clerk of the Recorder's Court of the City of Detroit as a correct transcript from the record on file in the court. This certification complied with T.R. 44; hence, no error occurred in the admission of this exhibit.

■ Defendant argues a similar lack of certification with respect to State's Exhibit No. 2, prison mittimus, photograph, and fingerprint records of the Defendant, and State's Exhibit No. 4, a copy of a docket sheet for a cause entitled State of

Ohio v. Carel Williams and which refers to his alias, Larry Mayes. Exhibit No. 2 was properly certified when the Supervisor of Records for the State Prison of Southern Michigan declared, in a notorized statement, that the record was "a true copy" of the records on file. Similarly, Exhibit No. 4 was properly certified by the clerk of the court in whose custody the records were kept.

 Defendant argues that Exhibit No. 3, an indictment of Carel Williams, alias Larry Mayes, for robbery was irrelevant in that it contained no cause number and was not referred to in the information charging Defendant with being an habitual offender. While Defendant is correct that Exhibit No. 3, standing alone, does not prove a prior felony conviction, it was admitted along with State's Exhibit No. 4, which records a conviction for robbery, one of the two prior felonies charged in the habitual offender information. Although Exhibit No. 3 bears no separate identifying number, it is clearly an indictment of the same Carel Williams a/k/a Larry Mayes who is the defendant shown by Exhibit No. 4 to have been convicted. We fail to see how Defendant was harmed by the admission of Exhibit No. 3.

 Exhibit No. 5, prison photograph and fingerprint records of the Defendant, from the Ohio Bureau of Criminal Identification and Investigation, the central repository for all felon arrest records for the State of Ohio, are properly certified by the Superintendent of the bureau, the appropriate keeper of the records. Defendant argues that these records, however, make no reference to the judgment or sentencing, contain no cause number, make no reference to the court, and fail to show the date of conviction. It is apparent, however, that the records are related to the offense of which Defendant was shown to have been convicted by Exhibit No. 4. Defendant has failed to show how he was harmed by the introduction of this exhibit.

### ISSUE VII

Defendant assigns as error the trial court's denial of his motion for mistrial predicated upon the Prosecutor's statement during final argument in the habitual offender phase of the proceedings that Defendant's attorney "is not precluded from introducing evidence." He argues that the statement was an impermissible comment on his failure to testify and violated his constitutional right to remain silent and Ind.Code § 35–1–31–3 (Burns 1979, repealed effective September 1, 1982) which provides in pertinent part, "But if the defendant do [sic] not testify, his failure to do so shall not be commented upon or referred to in the argument of the cause, ...."

 Although we agree with Defendant that any comment which is subject to interpretation as a comment upon an accused's failure to testify is impermissible, *Bryant v. State*, (1979) 270 Ind. 268, 273, 385 N.E.2d 415, 419; *see also Pitman v. State*, (1982) Ind., 436 N.E.2d 74, 79; *Barnes v. State*, (1982) Ind., 435 N.E.2d 235, 241; *Crosson v. State*, (1980) Ind., 410 N.E.2d 1194, 1195, we do not agree with Defendant's characterization of the remark as a comment upon his failure to testify. The Prosecutor's comment came in rebuttal of Defendant's closing argument in which the defense attorney stated:

"And I would submit to you that I think it would be a very sorry commentary that we sent people to jail for automatic terms of 30 years, in addition to the sentence they are already receiving, based on some pieces of paper. We have certain Constitutional guarantees about confronting witnesses and guarantees that are geared to bringing people into court subject to cross-examination. The State is choosing to proceed on a different fashion, and they want your stamp of approval."

The State responded as follows:

"I am not sure that putting records to you is the only way I can, but I don't see Mr. Wolter's quarrel. It would be silly of me to expect you to believe someone from Michigan City that would come in and say, 'I recognize him'. They deal with thousands of people. The same

with Ohio. That's about ten years old. It would be silly to expect anyone there to remember. These are not just papers. They are certified as being accurate. Mr. Wolter is not precluded from introducing evidence—"

Defendant's counsel objected by stating that the Prosecutor could not comment upon Defendant's silence and moved for a mistrial. The trial court responded, "He did not comment on your—He said you are not precluded as to presenting evidence as to the documents." The mistrial motion was overruled.

 In that Defendant attacked the Prosecutor's reliance upon written documents to support the habitual offender charge, the Prosecutor responded to the attack, not by commenting on Defendant's failure to testify, but rather by commenting upon his failure to present any evidence to refute the accuracy of the documents that the State had put into evidence. Stating that certain evidence is unrefuted is not a comment upon a defendant's failure to testify. *Pitman v. State*, 436 N.E.2d at 79; *see also Bailey v. State*, (1982) Ind.App., 438 N.E.2d 22, 26 (transfer denied).

Moreover, the trial court reiterated Defendant's right to decline to testify in the following final instruction:

"Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

The defendant is not required to present any evidence to prove his innocence or to prove or explain anything."

### ISSUE VIII

Defendant was sentenced to thirty-five (35) years imprisonment on Counts I and II (Rape and Unlawful Deviate Conduct), said sentences to run concurrently, and to ten (10) years imprisonment on Count III (Robbery), said sentence to run consecutively to those imposed on Counts I and II. The trial court also imposed an additional thirty (30) year consecutive sentence upon the finding of habitual criminality. It did not, however, specify the underlying felony to which the habitual offender sentence enhancement was to be applied. Moreover, from the trial judge's sentencing statement, the rationale for sentencing the Defendant as he did is unclear.

■ For this reason we remand this cause for resentencing in accordance with our decisions regarding a proper statement of reasons for enhancing a sentence, *see, e.g., Lenn v. State*, (1982) Ind., 437 N.E.2d 56, 58; *Page v. State*, (1981) Ind., 424 N.E.2d 1021, 1023; *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316, 319, and in accordance with our decisions regarding the proper enhancement of a sentence upon a finding of habitual criminality. *See, e.g., McBrady v. State*, (1984) Ind., 459 N.E.2d 719, 725; *Short v. State*, 91982) Ind., 443 N.E.2d 298, 301; *Yager v. State*, (1982) Ind., 437 N.E.2d 454, 457; *Johnson v. State*, (1982) Ind., 432 N.E.2d 1358, 1362. In all other respects the judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.