**Ricky SCOTT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0701–CR–33.

Court of Appeals of Indiana.

Aug. 6, 2007.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Following a bench trial, Ricky Scott appeals his conviction of theft, a Class D felony. Scott raises the sole issue of whether sufficient evidence supports his conviction. Concluding that sufficient evidence exists, we affirm.

### Facts and Procedural History

On August 19, 2005, Patricia Stewart was sitting in her car waiting in the drive-through lane at King Ribs in Indianapolis. While she was sitting in her car, Stewart saw a man leave King Ribs carrying a bag and walk to a brown or tan car[1] in which another man was sitting. The man placed his bag in the car and walked behind the restaurant to a shed-like structure, which is actually a refrigerator. The man used a key to unlock the refrigerator, entered and emerged with a stack of ribs and placed them in a box that was on the ground near the structure. The man went back into the refrigerator and carried out another stack of ribs, placed them in the box, returned to his car, and left. Stewart told employees of the store what she had seen, and the employees told her that the man she had seen was Scott, who had previously worked at King Ribs. Later in the evening, in the company of police officers, Stewart believed that she saw the car she had seen at King Ribs parked in the apartment complex where Scott lived.

On August 20, 2005, the State charged Scott with theft as a Class D felony and possession of marijuana as a Class A misdemeanor.[2] Stewart testified as to what she had seen, and identified Scott as the perpetrator. When pressed by the defense on cross-examination, she admitted that she "couldn't be absolutely sure" that Scott was the man whom she saw, and when asked by the trial court, she stated that her level of confidence was "about an eight or nine," or "about eighty percent sure" that Scott was the man. Tr. at 13. Robin Clardy, the owner of King Ribs, testified that ribs were in fact stolen from her store, that Scott had previously worked at King Ribs, and that he was familiar with the operation and procedures of the store. Scott took the stand in his defense and admitted that he had been at King Ribs that day to purchase food, but denied taking the uncooked ribs from the refrigerator. He also stated that he drove a "champale color" or "gold looking" Oldsmobile. Tr. at 24. After hearing the argument of counsel, the trial court made the following statement:

> Okay, but she's eighty percent sure. Okay, and I asked her, despite seeing the Court pull all of that out, and she had to admit ... she's a credible witness, despite all that she said she was eighty percent sure.... There's no contesting that this actually happened. Somebody took the meat out. But it would have to be somebody who

---

1. Stewart testified: "I believe it was tan and brown or tan and beige. It's been so long, but I do know it was kind of tan-ish (sic) car, brown-ish (sic)." Transcript at 4.

2. At trial, the State introduced no evidence relating to the possession of marijuana charge, and the trial court entered an order for involuntary dismissal under Indiana Trial Rule 41(B).

matches his description, there the same day he happens to be there, would seemingly know how the system works, which is what he does, who has a car very similar to his in color that later ends up at the same apartment complex where he lives, and he had an hour and a half to get rid of the meat, okay?[3]  ... But despite all of that, it's purely coincidence, it was somebody else who did it and ended up where ... the car ends up at the same place where he lives?  ... I think the odds against that, that this was somebody else, I think the odds are pretty much nil.  I'm going to find the State did prove its case beyond a reasonable doubt. ...

Tr. at 30.  Scott now appeals.

### Discussion and Decision

Scott argues that the State failed to introduce sufficient evidence from which the trial court could conclude beyond a reasonable doubt that he was the man whom Stewart observed steal the ribs. Our supreme court has recently summarized our standard of review when assessing claims of insufficient evidence.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict.  It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling.  Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond

a reasonable doubt.  It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence.  The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted) (emphasis in original).

■ It is well-established that "the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal." *Toney v. State,* 715 N.E.2d 367, 369 (Ind.1999).  We recognize that Stewart's testimony was equivocal, as she stated that she was only about eighty percent sure that Scott was the man whom she saw.

Scott cites *Gaddis v. State,* 253 Ind. 73, 251 N.E.2d 658 (1969), for the proposition that "equivocal testimony as to the identification of the defendant as the perpetrator is not sufficient evidence to sustain the conviction."  Appellant's Brief at 7.  In *Gaddis,* the testimony was not only "at best equivocal," but also was the result of coercion by the State, who threatened the witness with jail time if he did not testify against the defendant.  253 Ind. at 80, 251 N.E.2d at 661.  Also, research has disclosed many cases that seem to indicate that Scott incorrectly states the law, and that equivocal identification testimony is sufficient to support a conviction.  *See Griffin v. State,* 501 N.E.2d 1077, 1078 (Ind.1986) ("Identification evidence need not be unequivocal to be sufficient to support a conviction."); *Mayes v. State,* 467 N.E.2d 1189, 1193 (Ind.1984) ("[I]dentification testimony need not necessarily be unequivocal in order to sustain a conviction"); *Poe v. State,* 445 N.E.2d 94, 98 (Ind.1983) ("A witness may testify upon the issue of

---

**3.** When police officers arrested Scott, he offered to let them search his apartment and car.  The officers declined, and the meat was never recovered.

the identification of the accused in the form of an opinion or belief, and such testimony, standing alone, is sufficient to support a finding upon the issue of identification."); *Johnson v. State,* 432 N.E.2d 1358, 1361 (Ind.1982) ("[I]dentification testimony need not necessarily be unequivocal in order to sustain a conviction."); *Heeter v. State,* 661 N.E.2d 612, 616 (Ind. Ct.App.1996). Perhaps the most direct statement on this issue came in *Walker v. State,* where our supreme court stated that "a conviction may be sustained, although a witness declined to swear positively and testifies merely that he believes accused is the person whom he saw commit the crime." 250 Ind. 649, 652, 238 N.E.2d 466, 468 (1968) (quoting 23 C.J.S. Criminal Law § 920); *see also Medsker v. State,* 224 Ind. 587, 590, 70 N.E.2d 182, 184 (1946) (it was for the jury to determine the weight of police officer's testimony that the defendant was "in his opinion" the man whom he saw near the scene of the crime).

However, our supreme court has also stated, without mentioning *Walker* or *Medsker,* that where "[t]he State's entire case was dependent upon the credibility of [a witness's] identification of the defendant . . . that testimony must be unequivocal." *Richardson v. State,* 270 Ind. 566, 569, 388 N.E.2d 488, 491 (1979). Our supreme court later clarified that its holding in *Richardson* was limited "to circumstances where the State's case was entirely dependent on a single witness' identification of the defendant." *Kelley v. State,* 482 N.E.2d 701, 703 (Ind.1985). However, it is clear that our supreme court did not intend to overrule *Walker* or *Medsker* in *Richardson,* as it cited *Medsker* in *Poe,* which was decided after *Richardson,* to support its statement that "[a] witness may testify upon the issue of the identification of the accused in the form of an

opinion or belief, and such testimony, standing alone, is sufficient to support a finding upon the issue of identification of the accused." 445 N.E.2d at 98.

Also, many of the cases cited above indicating that identification testimony need not be unequivocal to support a conviction were decided after *Richardson.* However, in these cases, the State introduced some sort of evidence tending to implicate the defendant other than equivocal identification testimony of a witness previously unfamiliar with the defendant. *See Griffin,* 501 N.E.2d at 1079 (in addition to equivocal identification testimony of witness, one of defendant's accomplices testified that defendant planned and participated in the robberies); *Mayes,* 467 N.E.2d at 1193 (although witness had previously identified another man as her assailant, witness explained her error at trial and positively identified the defendant as her assailant); *Poe,* 445 N.E.2d at 98 (witness who identified defendant at trial had represented defendant in a previous case); *Johnson,* 432 N.E.2d at 1361–62 (other witnesses' testimony corroborated victim's identification testimony); *Heeter,* 661 N.E.2d at 616 (although witness stated on cross-examination that she did not see the defendant's face clearly, witness also testified that she recognized the defendant at the time of the attack because of his hair and because she recognized his voice from previous conversations).

█ Based on our reading of these cases, we conclude that identification evidence need not be unequivocal to be sufficient to support a conviction only when the identification is supported by circumstantial evidence; when such identification is the *only* evidence, the identification must be unequivocal.[4] This interpretation is in

4. Whether distinguishing between an identifi-    cation witness who states that he or she is

accord with the "incredible dubiosity" rule, under which we will impinge upon the trier of fact's responsibility to weigh the evidence only "where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). We recognize that this interpretation may seem to be at odds with our supreme court's statement in *Poe*, that identification testimony stated in the form of an opinion or belief, *standing alone*, is sufficient to support a conviction,[5] 445 N.E.2d at 98, and is clearly at odds with its statements in *Walker* and *Medsker*. However, the more recent decisions of our supreme court indicate that equivocal testimony of an eye-witness, standing alone, does not support a conviction.[6]

■■■ However, equivocal testimony can certainly contribute to a finding of guilt beyond a reasonable doubt.[7] *See, e.g., Jordan v. State*, 432 N.E.2d 9, 11 (Ind.1982) (reversing court of appeals' determination that insufficient evidence existed based on equivocal nature of eye-witness testimony because circumstantial evidence, along with identification, supported trial court's determination of

certain and one who does not profess absolute confidence is a well-founded course is debatable. *See* infra, note 7. However, it is a debate in which we need not engage, as this intermediate appellate court is bound by the decisions of our supreme court.

5. The witness in *Poe* was previously acquainted with the defendant. Although the *Poe* court did not discuss the fact that the defendant was not a stranger to the identifying witness, numerous studies have demonstrated the particular unreliability of the identification of strangers. *See* Michael K. Lavanga & Leslie H. Spiegel, Recent Decisions: The Maryland Court of Appeals, 58 Md. L.Rev. 867, 915 (citing Cindy J. O'Hagan, When Seeing is Not Believing: The Case for Eyewitness Expert Testimony, 81 Geo. L.J. 741, 745 (1993)). Even before modern studies, the reliability of identification testimony relating to strangers was questioned. *E.g., id.* ("What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy." (quoting Felix Frankfurter, The Case of Sacco and Vanzetti 30 (1927))).

6. This holding is limited solely to issues of identification. *See Bridwell v. State*, 507 N.E.2d 644, 648 (Ind.Ct.App.1987), *trans. denied*. Our supreme court has recently indicated that equivocal testimony relating to other material elements may be sufficient to support a conviction. *See Staton v. State*, 853 N.E.2d 470, 475 (Ind.2006) (testimony that the witness "imagined" or "understood" the

defendant to be eighteen was sufficient to support a factual determination that the defendant was eighteen). *But see id.* at 476 (Sullivan, J., dissenting) (concluding that such evidence was not sufficient for a trier of fact to find beyond a reasonable doubt that the defendant was over the age of 18).

7. In fact, studies have shown that eye-witnesses who are less than certain about their identification are no less accurate in their identifications than those witnesses who are certain. *See* Noah Clements, Flipping a Coin: A Solution for the Inherent Unreliability of Eyewitness Identification Testimony, 40 Ind. L.Rev. 271 (2007) ("If there is one thing that the research is virtually unanimous on, it is this: there is no correlation whatsoever between eyewitness certainty and accuracy. 'Experienced judges understand that the most positive witness is not always the most reliable.'" (quoting Nathan R. Sobel, Eyewitness Identification: Legal & Practical Problems (2d ed. Rev.2004) § 6.12 at 6–50)); Kevin Jon Heller, The Cognitive Psychology of Circumstantial Evidence, 105 Mich. L.Rev. 241, 249 (2006) ("[T]he witness's confidence that she made a correct identification ... is at best 'a poor predictor of identification accuracy' and may have no relationship with reliability at all." (quoting Jennifer L. Devenport & Brian L. Cutler, Eyewitness Identification Evidence, 3 Psychol. Pub. Pol'y & L. 338, 349 (1997))). Although we recognize that these studies undermine the logic behind *Richardson*, we are not at liberty to abrogate a holding of our supreme court based on scientific studies.

guilt); *cf. Gaddis*, 253 Ind. at 80, 251 N.E.2d at 661 (noting the "complete lack of circumstantial evidence in support of [the defendant's] guilt"). Here, the evidence consisted of Stewart's eighty-percent identification, the fact that someone did in fact take ribs from the refrigerator, Scott's admission that he was at King Ribs the day of the theft, evidence that Scott was familiar with the operation of the store, and Scott's admission that he drives a car of a similar color as described by Stewart.

■ This evidence does not overwhelm us, and clearly no single fact by itself could constitute sufficient evidence. However, we recognize that "[t]he trial judge heard all of the evidence and observed the witnesses [and] was more able than we are to determine their credibility and determine the probative value of all the evidence before him." *Jordan*, 432 N.E.2d at 12. We cannot reverse the trial court unless we conclude that "no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt." *Drane*, 867 N.E.2d at 146 (emphasis in original). Based on the current state of the law relating to eye-witness testimony[8] and our standard of review involving challenges to the sufficiency of the evidence, we cannot say that no reasonable fact-finder could have found beyond a reasonable doubt that Scott committed this crime.

*Conclusion*

We conclude that sufficient evidence supports the trial court's determination that Scott committed theft.

Affirmed.

SULLIVAN, SR. J., and VAIDIK, J., concur.

---

**8.** At least one commentator has suggested banning eye-witness testimony altogether from criminal trials:

> Eyewitness identification testimony is known to the courts and to psychologists to be extremely unreliable. However, there is a great resistance to excluding this type of evidence at trial. The commonsense belief that "seeing is believing" is hard to overcome. The problem is not just that people are being convicted of crimes they did not commit, but that for every wrongful conviction there is a guilty party left to wreak havoc on the public. The only effective way to fix this problem is to exclude eyewitness testimony from trials.

Clements, 40 Ind. L.Rev. at 290.